# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

| | |
|---|---|
| SUSAN KELLY; and TIMOTHY KELLY,<br><br>      Plaintiffs,<br><br>vs.<br><br>ETHICON, INC., and JOHNSON & JOHNSON,<br><br>      Defendants. | No. 20-CV-2036-CJW-MAR<br><br><br><br>**MEMORANDUM OPINION AND ORDER** |

---

## TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................... 3

II.  RELEVANT BACKGROUND ........................................................... 3

III.  APPLICABLE LAW ........................................................................ 4

    A.  Choice of Law ......................................................................... 4

    B.  Summary Judgment ................................................................ 5

IV.  ANALYSIS ...................................................................................... 6

    A.  Unopposed Claims ................................................................. 7

    B.  Negligence-Based Claims ...................................................... 7

        1.  Negligence ................................................................. 8

a.      Negligent Manufacturing Defect ................................ 8

b.      Negligent Failure to Warn ...................................... 9

c.      Negligent Design .................................................12

2.      Negligent Misrepresentation ............................................12

3.      Negligent Infliction of Emotional Distress ...........................14

4.      Gross Negligence ......................................................15

C.      Fraud-Based Claims ..............................................................16

D.      Breach of Implied Warranty Claim ...........................................17

1.      Statute-of-Repose ......................................................18

2.      Statute-of-Limitations ..................................................18

E.      Unjust Enrichment Claim .........................................................21

V.      CONCLUSION ...............................................................................22

## I.    INTRODUCTION

This matter is before the Court on defendants' Motion for Partial Summary Judgment filed on August 9, 2019.  (Docs. 38 & 39).  On August 28, 2019, plaintiffs timely filed a resistance.  (Doc. 45).  For the following reasons, the Court **grants in part** and **denies in part** defendants' motion.

## II.    RELEVANT BACKGROUND

Plaintiffs Susan Kelly ("plaintiff") and Timothy Kelly ("Timothy") have resided in Iowa since 1990.  (Doc. 38–1, at 3).  Defendant Johnson & Johnson and its subsidiary, defendant Ethicon, Inc. ("Ethicon"), are New Jersey corporations.  (Doc. 1, at 6).

On March 7, 2004, plaintiff received a tension-free vaginal tape ("TVT") mesh implant manufactured by Ethicon.  *See* (Doc. 39, at 2).  Plaintiff's implantation procedure took place in Waterloo, Iowa.   (*Id.*).   Plaintiff received the implant to stabilize her prolapsed bladder.  (Doc. 40-1, at 44).  Dr. Randall Bremner ("Dr. Bremner") performed the procedure.  (Doc. 39, at 2).  Plaintiff testified that she does not remember receiving any brochures, handouts, or other materials about the TVT implant before her surgery, that she did not know who manufactured the implant, and that she did not rely on any statements by defendants in selecting it.  (*Id.*; 45, at 3–4).  Plaintiff, however, states that Dr. Bremner failed to inform her of the potential risks posed by the TVT implant and that she relied on his advice.  (Doc. 45, at 3–6).  She states she was only informed of the risks posed by the implant procedure and not the TVT itself.  (*Id.*, at 5).  Plaintiff alleges that, as a result of her TVT implant corroding, oxidizing, or eroding, she has suffered from, among other things, "depression, pelvic pain, dyspareunia, loss of services of her spouse, continued and worsening incontinence, [urinary tract infections], urinary retention, abdominal pain, urgency, frequency, and dysuria." (*Id.*, at 4) (citing plaintiff's deposition testimony).

3

On February 28, 2014, plaintiffs filed suit in the multidistrict litigation ("MDL") related to defendants' TVT implant in the United States District Court for the Southern District of West Virginia. (Doc. 1). Plaintiffs asserted seventeen claims consisting of: (1) negligence; (2) strict liability for a manufacturing defect; (3) strict liability for failure to warn; (4) strict liability for a defective product; (5) strict liability for a design defect; (6) common law fraud; (7) fraudulent concealment; (8) constructive fraud; (9) negligent misrepresentation; (10) negligent infliction of emotional distress; (11) breach of express warranty; (12) breach of implied warranty; (13) violation of consumer protection laws; (14) gross negligence; (15) unjust enrichment; (16) loss of consortium; and (17) punitive damages. (*Id.*).[1] On September 17, 2014, plaintiff had part of her TVT implant removed in Iowa City, Iowa by Dr. Elizabeth Takacs. (Docs. 39, at 2; 45, at 3).

## III. APPLICABLE LAW

### A. Choice of Law

For cases filed directly in the main MDL, "the choice of law that applies is the place where the plaintiff was implanted with the product." *Belanger v. Ethicon, Inc.*, No. 2:13-cv-12036, 2014 WL 346717, at *7 (S.D.W. Va. Jan. 30, 2014). Here, plaintiffs filed in the main MDL and plaintiff's implant surgery occurred in Iowa. (Doc. 40–1, at 43–44). Thus, as both parties appear to agree, Iowa substantive law applies to plaintiffs' claims. *See* (Doc. 39, at 4) (wherein defendants assert Iowa substantive law applies); (Doc. 45) (wherein plaintiffs cite Iowa substantive law throughout but do not explicitly state such law applies or disagree with defendants' position).

---

[1] Plaintiffs do not specify which plaintiff asserts which claim. (Doc. 1, at 4–5). The Complaint lists Timothy only as "Plaintiff's Spouse." (Doc. 1, at 1). It appears Timothy's only claim is for loss of consortium. *See* (Doc. 40–1, at 45). This claim is not at issue here. *See* (Doc. 39, at 1–2). To any extent Timothy intends to assert other claims on his own behalf, the Court finds he lacks standing and thus **grants** defendants' motion for summary judgment on such claims. The Court will, thus, omit Timothy from the remainder of its analysis here.

4

## B.  Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  When asserting that a fact is undisputed or is genuinely disputed, a party must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Alternatively, a party may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B).  More specifically, a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2).

A fact is "material" if it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "An issue of material fact is genuine if it has a real basis in the record," *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted), or "when a reasonable jury could return a verdict for the nonmoving party on the question," *Wood v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (internal quotation marks and citation omitted).   Evidence that presents only "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of fact genuine.  In sum, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" that it requires "a jury or judge to resolve the parties' differing versions of the truth at trial." *Id*. at 249 (citation and internal quotation marks omitted).

5

In determining whether a genuine issue of material fact exists, courts must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that can be drawn from the facts. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014); *Matsushita*, 475 U.S. at 587-88 (citation omitted); *see also Reed v. City of St. Charles*, 561 F.3d 788, 790 (8th Cir. 2009) (stating that in ruling on a motion for summary judgment, a court must view the facts "in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them") (alteration in original) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). A court does "not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004) (citation omitted). Rather, a "court's function is to determine whether a dispute about a material fact is genuine[.]" *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996). When considering a motion for summary judgment, the court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## IV.    ANALYSIS

Defendants move for summary judgment on plaintiff's claims for negligence (Count I), strict liability for manufacturing defect (Count II), strict liability for failure to warn (Count III), strict liability for defective product (Count IV), strict liability for design defect (Count V), common law fraud (Count VI), fraudulent concealment (Count VII), constructive fraud (VIII), negligent misrepresentation (Count IX), negligent infliction of emotional distress (Count X), breach of express warranty (Count XI), breach of implied warranty (Count XII), violation of consumer protection laws (Count XIII), gross negligence (Count XIV), and unjust enrichment (Count XV). (Doc. 39, at 1–2).

6

The Court will address plaintiff's claims in the following order: (1) claims on which plaintiff does not oppose summary judgment; (2) negligence-based claims; (3) fraud-based claims; (4) breach of implied warranty; and (5) unjust enrichment.

### A.    Unopposed Claims

Plaintiff does not oppose defendants' motion for summary judgment as to her claims of strict liability for a manufacturing defect (Count II), strict liability for failure to warn (Count III), strict liability for defective product (Count IV), strict liability for defective design (Count V), breach of express warranty (Count XI), and violation of consumer protection laws (Count XIII). (Doc. 45, at 7, 11, 17).

"Even if a motion for summary judgment on a particular claim stands unopposed, the district court must still determine that the moving party is entitled to judgment as a matter of law on that claim." *Interstate Power Co. v. Kan. City Power & Light Co.*, 992 F.2d 804, 807 (8th Cir. 1993). Summary judgment is appropriately granted on claims that have been explicitly abandoned. *See, e.g.*, *Steadfast Ins. Co. v. Arc Steel, LLC*, No. 16-3214-CV-S-SRB, 2019 WL 2090696, at *1 (W.D. Mo. May 13, 2019).

After reviewing the record and the law on these claims, the Court finds summary judgment is appropriate to the extent these claims are not outright abandoned. The evidence in the record fails to generate a genuine issue of material fact as to these claims. Thus, defendants' motion for summary judgment is **granted** as to plaintiff's claims for strict liability for a manufacturing defect, strict liability for failure to warn, strict liability for defective product, strict liability for defective design, breach of express warranty, and violation of consumer protection laws.

### B.    Negligence-Based Claims

Defendants move for summary judgment on plaintiff's claims of (1) negligence (Count I); (2) negligent misrepresentation (Count IX); (3) negligent infliction of emotional distress (Count X); and (4) gross negligence (Count XIV). (Doc. 39, at 1–2).

7

## 1.    Negligence

Defendants only move for summary judgment on plaintiff's negligence claim to the extent it is based on negligent failure to warn or negligent manufacturing defect. (Doc. 39, at 1).  As to a negligent manufacturing defect claim, defendants argue plaintiff has not produced any evidence that defendants' TVT implant deviated from its intended product design.  (*Id.*, at 5).  As to the negligent failure to warn claim, defendants argue plaintiff has failed to show that any alleged defect in defendants' warnings proximately caused her injuries.  (*Id.*, at 6–8).  Plaintiff alleges that her negligence claim also encompasses a negligent design claim, which she asserts defendants do not challenge. (Doc. 45, at 7–8).

### a.    Negligent Manufacturing Defect

Under Iowa law, a manufacturing defect claim requires some showing that the product deviated from its intended design.  *See, e.g.*, *Depositors Ins. Co v. Wal-Mart Stores, Inc.*, 506 F.3d 1092, 1095 (8th Cir. 2007) (citing *Wright v. Brooke Grp. Ltd.*, 652 N.W.2d 159, 179 (Iowa 2002)).  Thus, under both strict liability and negligence theories, the product must have had some defect at the time of sale which caused the plaintiff's injuries.  *Nationwide Agribusiness Ins. Co. v. SMA Elevator Constr. Inc.*, 816 F. Supp. 2d 631, 663 (N.D. Iowa 2011) (citation omitted).

Plaintiff argues only that her negligent manufacturing claim should remain because she "intend[s] to present evidence that Defendants' manufacturing process and the raw materials used in the manufacture of the TVT product resulted in defects in the product[.]"  (Doc. 45, at 7).  In short, plaintiff fails to point to any evidence currently in the record which supports her negligent manufacturing claim.  *See* FED. R. CIV. P. 56(c)(1)(A).  Plaintiff has not only failed to present evidence of a defect and how that defect caused her injuries, she does not even specify what about the TVT implant was

allegedly defective. Her mere intent to present evidence on this claim in the future is insufficient at this stage.

Thus, the Court **grants** defendants' motion for summary judgment on plaintiff's negligence claim to the extent it asserts a claim for negligent manufacturing defect.

### b.  *Negligent Failure to Warn*

Under Iowa law, the relevant inquiry on a negligent failure to warn claim is whether a reasonable manufacturer knew or should have known of a danger in light of prevailing scientific knowledge yet failed to provide an adequate warning as to that danger despite its duty to do so. *Wright v. Brooke Grp. Ltd.*, 114 F. Supp. 2d 797, 819 (N.D. Iowa 2000) (citing *Olson v. Prosoco, Inc.*, 522 N.W.2d 284, 290 (Iowa 1994)). The defendant's failure to warn must be the proximate cause of the plaintiff's injury. *Daughetee v. CHR. Hansen, Inc.*, 960 F. Supp. 2d 849, 872 (N.D. Iowa 2013). Proximate cause is ordinarily an issue for the jury to decide and should only rarely be decided as a matter of law. *Id.* (citing *Thompson v. Kaczinski*, 774 N.W.2d 829, 832 (Iowa 2009).

Under the learned intermediary doctrine, a manufacturer of prescription drug or medical device need not provide warnings directly to patients using its products so long as adequate warnings were given to the health care provider supplying the products to patients. RESTATEMENT (THIRD) OF TORTS § 6 cmt. e; *see also Daughetee*, 960 F. Supp. 2d at 869–70. When a manufacturer supplied warnings to the health care provider, the plaintiff must show different or additional warnings were necessary and would have altered the health care provider's decision to supply the product at issue. *Willet v. Johnson & Johnson*, No. 1:12-CV-00034-JAJ-RAW, 2019 WL 7500524, at *2–3 (S.D. Iowa Sept. 30, 2019). Indeed, to establish proximate causation, "the plaintiff must show that a proper warning would have changed the decision of the treating physician, i.e., that but for the inadequate warning, the treating physician would not have used or

9

prescribed the product." *Wessels v. Biomet Orthopedics, LLC*, No. 18-CV-97-KEM, 2020 WL 3421478, at \*14 (N.D. Iowa June 22, 2020) (citations and quotation marks omitted).

Plaintiff argues summary judgment is inappropriate on her negligent failure to warn claim because defendants' arguments are "conclusory," and they have not cited evidence showing that Dr. Bremner[2] was adequately warned before performing plaintiff's procedure. (Doc. 45, at 8). Plaintiff further argues she will show that Dr. Bremner was not adequately warned of the TVT implant's risks and that, had he been informed, he would not have used it here. (*Id.*, at 9). Plaintiff further notes that, had she been adequately warned, she would not have consented to the surgery. (*Id.*). Plaintiff cites her own testimony and the expert opinion of Dr. Bruce Rosenzweig ("Dr. Rosenzweig") in support of her resistance. (*Id.*, at 10).

Plaintiff has failed to provide sufficient evidence to support her negligent failure to warn claim. The burden is on her to show the existence of a genuine dispute, not on defendants to show the absence of one. *See Hartnagel*, 953 F.2d at 395-96. Further, defendants' arguments are not mere conclusions; they allege plaintiff has not provided sufficient evidence of proximate causation.

Specifically, defendants assert that plaintiff's claim fails because she did not depose Dr. Bremner and thus cannot prove that any change in the warnings would have altered Dr. Bremner's decision to select the TVT. (Doc. 39, at 7–8, n.2). The fact that Dr. Bremner was not deposed does not itself mean that plaintiff's claim is invalid. Indeed, other evidence could exist outside a deposition which would indicate Dr. Bremner's conduct would have been different had he received different or additional warnings. For example, Dr. Bremner could have written a note contemporaneous with

---

[2] Throughout this section of her resistance, plaintiff uses inconsistent pronouns when referring to Dr. Bremner and erroneously refers to him as Dr. Raymond twice. (Doc. 45, at 8–10).

plaintiff's surgery which indicated his skepticism about some potential side effects of the TVT implant but noting that defendants' warnings did not discuss any such side effects. Dr. Bremner also could have, following plaintiff's surgery, published an article about the unforeseen side effects of mesh implants. No such evidence, however, is in the record. Dr. Rosenzweig and plaintiff's opinions that the warnings were inadequate offer no more than speculation as to what effect different warnings would have had on Dr. Bremmer's decision. Without deposition testimony, an affidavit, or any other evidence indicating that Dr. Bremner's decision to use the TVT implant would have been altered by different or additional warnings, plaintiff's claim does not establish proximate causation.[3]

The Court recognizes, however, that additional or different warnings may impact more than a physician's ultimate decision to use a medical device. Indeed, such warnings may alter the way physicians counsel their patients. *See Hall v. Ethicon, Inc.*, No. 1:19-cv-193 SNLJ, 2020 WL 1248668, at *2 (E.D. Mo. Mar. 16, 2020). For example, in *Hall v. Ethicon, Inc.*, the plaintiff's physician testified that she would have used the same product even if a different warning accompanied it. *Id.* The court found summary judgment was inappropriate on plaintiff's strict liability for failure to warn claim, however, because the physician also testified that she would have communicated "as many details as possible" to the plaintiff about the proposed implant. *Id.* The plaintiff testified that, had she received these additional warnings, she would not have consented to the surgery. *Id.*; *see also Gilliland v. Novartis Pharms. Corp.*, 34 F. Supp. 3d 960, 970–73 (S.D. Iowa 2014) (concluding that even if additional warnings would not have

---

[3] Plaintiff primarily relies on *Cisson v. C.R. Bard, Inc.*, 2:11-cv-00195, Doc. 272 (S.D.W. Va. June 4, 2013) (available at https://law.justia.com/cases/federal/district-courts/west-virginia/wvsdce/2:2011cv00195/68322/272/). In *Cisson*, however, the plaintiff provided the testimony of her treating physician which indicated the physician was not warned of certain risks and would have changed his decision to use the implant had he been adequately warned. *See id.* at *12. Thus, *Cisson* does not support plaintiff's argument. (Doc. 45, at 9).

changed an oncologist's decision, sufficient evidence indicated that such warnings would have changed the plaintiff's decision had they been communicated to her).

Here, however, there is no evidence that additional or different warnings would have changed how Dr. Bremner advised plaintiff about the TVT implant. Thus, although plaintiff states she would have rejected the TVT implant had she received such warnings, the Court has no factual basis to conclude Dr. Bremmer would have either changed his decision or advised plaintiff differently had he, as a learned intermediary, received additional or different warnings from defendants.

Thus, the Court **grants** defendants' motion for summary judgment on plaintiff's negligence claim to the extent it asserts a claim for negligent failure to warn.

### c.    *Negligent Design*

Defendants do not move for summary judgment on plaintiff's negligence claim for any negligent design. (Doc. 39). Plaintiff argues this claim should be allowed to proceed. (Doc. 45, at 7–8). Defendants did not submit a reply contesting the presence of an imbedded negligent design claim. The fact that defendants only moved for summary judgment on plaintiff's negligence claim to a limited extent suggests they anticipated it encompassed additional claims. Indeed, plaintiff has presented sufficient evidence concerning the TVT implant's design, notably in the form of Dr. Rosenzweig's opinion, that there is a genuine issue of material fact as to the negligent design of the TVT. (Doc. 40–1, at 27–29).

Thus, the Court **denies** defendants' motion for summary judgment on plaintiff's negligence claim to the extent it asserts a claim for negligent design.

### 2.    *Negligent Misrepresentation*

Under Iowa law, negligent misrepresentation occurs when:

One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is

subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Bagelmann v. First Nat'l Bank*, 823 N.W.2d 18, 30 (Iowa 2012) (citing RESTATEMENT (SECOND) OF TORTS § 552). Such loss is limited, however to "the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it" and, through reliance, "he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction." *Id.*

Defendants argue plaintiff's negligent misrepresentation claim fails because she has not presented any evidence that she or Dr. Bremner relied on any statements made by defendants. (Doc. 39, at 9–10). There is no dispute that Dr. Bremner has not offered any testimony. There is also no dispute that plaintiff has no recollection of reading, relying upon, or even being aware of any statements defendants made about the TVT implant before her surgery. Plaintiff argues her negligent misrepresentation claim does not require proof of reliance. (Doc. 45, at 11). She also argues Dr. Bremner relied on defendants' statements and defendants have not shown that such statements were true and accurate. (*Id.*, at 12).

Plaintiff is incorrect; justifiable reliance is a critical element of negligent misrepresentation. *See, e.g.*, *Vos v. Farm Bureau Life Ins. Co.*, 667 N.W.2d 36, 53 (Iowa 2003) (noting that justifiable reliance is an element of negligent misrepresentation) (citing *Barske v. Rockwell Int'l Corp.*, 514 N.W.2d 917, 924 (Iowa 1994)). Plaintiff's own citation in her brief plainly discusses reliance. (Doc. 45, at 11–12) (citing *Huck v. Wyeth, Inc.*, 850 N.W.2d 353, 390 (Iowa 2014) ("This section, setting forth requirements for the tort of negligent misrepresentation, provides that an actor supplying false information for the guidance of others may be liable for losses caused by *justifiable reliance* upon the information.") (emphasis added). There is no evidence in the record

that Dr. Bremner relied upon or even read defendants' warnings and instructions. Plaintiff has also testified that she in no way relied upon such statements. Thus, plaintiff has not provided any evidence as to her justifiable reliance, which is a required element.

Thus, the Court **grants** defendants' motion for summary judgment on plaintiff's negligent misrepresentation claim.

### 3.      *Negligent Infliction of Emotional Distress*

"Iowa law recognizes a claim of negligent infliction of emotional distress only in cases where the plaintiff has suffered some 'physical harm.'" *Burrow ex rel. Burrow v. Postville Cmty. Sch. Dist.*, 929 F. Supp. 1193, 1210 (N.D. Iowa 1996). There must be some causal connection between the plaintiff's physical injury and the emotional distress suffered. *Newkirk v. GKN Armstrong Wheels, Inc.*, 168 F. Supp. 3d 1174, 1198–99 (N.D. Iowa 2016). A claim for negligent infliction of emotional distress is appropriate without physical injury, however, under two exceptions: liability to certain bystanders and direct victims of emotional distress. *Clark v. Estate of Rice*, 653 N.W.2d 166, 170–71 (Iowa 2002).

Defendants argue summary judgment is appropriate because negligent infliction of emotional distress claims are limited to bystander liability or cases involving a duty of care to avoid causing emotional harm. (Doc. 39, at 13). Such claims are only limited to these circumstances when physical injury is absent. *Clark*, 653 N.W.2d at 170-71. In other words, defendants cite the exceptions to the general rule, which is that negligent infliction of emotional distress can be stated as an independent cause of action when physical injury is present and is causally related to the emotional distress at issue. Plaintiff similarly analyzes her claim under the exception for direct victims of emotional distress in her resistance. (Doc. 45, at 17–18).

The Court need not consider the requirements of this exception, however, because plaintiff sufficiently alleges physical injuries here. *See Burrow*, 929 F. Supp. at 1210–

11 (holding that one of the plaintiffs fell within the general rule for negligent infliction of emotional distress claims because she sufficiently alleged emotional distress arising from physical harm, i.e. students pushing her into lockers, running into her in the hallways, and kicking her).  Also, plaintiff sufficiently alleges that the TVT implant caused her injuries and ailments, which are directly related to her emotional distress.  To any extent this claim is ultimately duplicative of damages awarded to plaintiff on her other claims, such damages can be reduced at that time.

Thus, the Court **denies** defendants' motion for summary judgment on plaintiff's negligent infliction of emotional distress.

### 4.    *Gross Negligence*

Defendants argue that a separate cause of action for gross negligence only exists in the realm of workers' compensation under Iowa law.  (Doc. 39, at 13–14).  Although defendants acknowledge gross negligence may be considered as an element of damages, they contend plaintiff cannot assert gross negligence on its own.  (*Id.*).  Plaintiff argues gross negligence is not confined to workers' compensation cases.  (Doc. 45, at 18).

"Iowa law is clear.  There is not a distinction between negligence and gross negligence under Iowa common law."  *Tim O'Neill Chevrolet, Inc. v. Pinkerton's, Inc.*, No. 8:00CV41, 2002 WL 205676, at *3 (D. Neb. Feb. 11, 2002) (citing *Frederick v. W. Union Tel. Co.*, 179 N.W. 934, 935 (Iowa 1920) ("It is true that gross negligence is not a distinct cause of action, and is but a degree of negligence[.]"); *Unertl v. Bezanson*, 414 N.W.2d 321, 326–27 (Iowa 1987) ("[G]ross negligence is not a distinct cause of action but rather a measure of negligence.")).  Indeed, Iowa has "eliminated gross negligence from the common law[.]"  *Sechler v. State*, 340 N.W.2d 759, 763 (Iowa 1983).  Thus,

15

plaintiff's claim of gross negligence here is improper and merely duplicative of her existing negligence claim.[4]

Thus, the Court **grants** defendants' motion for summary judgment on plaintiff's gross negligence claim.

### C.    *Fraud-Based Claims*

Like plaintiff's claim for negligent misrepresentation, her claims for common law fraud (Count VI), fraudulent concealment (Count VII), and constructive fraud (VIII) all require proof of justifiable reliance.  *See, e.g.*, *Estate of Anderson v. Iowa Dermatology Clinic*, 819 N.W.2d 408, 414–15 (Iowa 2012) (fraudulent concealment); *McGough v. Gabus*, 526 N.W.2d 328, 331–32 (Iowa 1995) (common law fraud); *Hotchkiss v. Int'l Profit Assocs., Inc.*, No. 13-0755, 2014 WL 3511786, at *10 (Iowa Ct. App. July 16, 2014) (equitable fraud); *see also Pierce v. Iowa-Mo. Conf. of Seventh-Day Adventists*, 534 N.W.2d 425, 426 (Iowa 1995) (using "equitable fraud" and "constructive fraud" interchangeably); *Fraud*, BLACK'S LAW DICTIONARY (11th ed. 2019) (noting "equitable fraud" and "constructive fraud" are synonyms).  As discussed above, plaintiff has failed to provide sufficient evidence of justifiable reliance.

Thus, the Court **grants** defendants' motion for summary judgment on plaintiff's claims of common law fraud, fraudulent concealment, and constructive fraud.[5]

---

[4] Although a handful of products liability cases note that plaintiffs have asserted gross negligence, none appear to afford relief based on gross negligence or discuss it as a separate claim.  *See, e.g.*, *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 716 (8th Cir. 2019); *Whitacre v. Energy Panel Structures, Inc.*, No. C09-3051-MWB, 2009 WL 3345733, at *1 (N.D. Iowa Oct. 13, 2009); *McConnell v. Aluminum Co. of Am.*, 367 N.W.2d 245, 246 (Iowa 1985).  Indeed, in some cases, the plaintiff merely abandons their gross negligence claim at the summary judgment stage.  *See Dieterich v. Inductotherm Corp.*, Civil No. 3:06-cv-00004-HDV, 2008 WL 11336244, at *1 (S.D. Iowa July 18, 2008).  Such claims are likely skimmed over or outright abandoned because they lack any basis in common law as well as any statutory basis outside workers' compensation.

[5] Defendants also argue that plaintiff's fraud and negligent misrepresentation claims fail because there was no fiduciary or confidential relationship between plaintiff and Ethicon.  (Doc. 39, at

16

### D. Breach of Implied Warranty Claim

Defendants argue plaintiff's breach of implied warranty claim (Count XII) is barred by the five-year statute-of-limitations in Iowa Code Section 614.1(4) for unwritten contracts. (Doc. 39, at 11). Plaintiff argues her claim is not barred because, citing the applicable statute-of-repose under Iowa Code Section 614.1(2A)(b), the statute-of-limitations is tolled "until harmed patients discover their diseases or conditions." (Doc. 45, at 15–16).

Plaintiff's implied warranty claim is subject to both a five-year statute-of-limitations under Section 614.1(4) and a 15-year statute-of-repose under Section 614.1(2A). *See Marchand v. Golden Rule Plumbing Heating & Cooling*, No. 16-1550, 2017 WL 5178996, at *2 (Iowa Ct. App. Nov. 8, 2017) (noting the simultaneous applicability of Sections 614.1(4) and 614.1(2A)); *see also Daughetee*, 960 F. Supp. 2d at 878 ("Iowa Code § 614.1(2A) is clearly a statute of repose.") (citations, alterations, and internal quotation marks omitted)). Indeed, it is both a claim concerning a product under an implied warranty theory as well as a claim premised on an unwritten contract. *See* IOWA CODE § 614.1. Thus, in concert, the statute-of-limitations puts a five-year limitation on recovery starting from the time the claim accrues and the statute-of-repose puts a 15-year absolute limitation starting from the time the product is purchased, absent some exception. *See Albrecht v. Gen. Motors Corp.*, 648 N.W.2d 87, 92 (Iowa 2002) (discussing the dual effect of applying both a statute-of-limitations and a statute-of-repose). Plaintiff must satisfy both to proceed on her claim. The Court will discuss each in turn.

---

10–11). In light of the Court's grant of summary judgment on all these claims on other grounds, it need not consider this alternative argument.

### 1.    *Statute-of-Repose*

Under Section 614.1(2A), a person must bring a products liability action against the manufacturer within 15 years of purchasing the product unless expressly warranted for a longer period.    Subsection 614.1(2A)(b)(1) states, however, that the 15-year restriction "shall not apply to the time period in which to discover a disease that is latent and caused by exposure to harmful material," in which case the claim accrues when the disease and its cause become known to the person or when the person should have been aware of the disease and its cause.    Section 614.1(2A)(b)(2) specifies, however, that "harmful material" as used in the preceding subsection encompasses only certain breast implants, asbestos, dioxins, tobacco, polychlorinated biphenyls, or certain substances officially regarded as environmentally toxic.

Here, plaintiff received her TVT implant on March 7, 2004.  (Doc. 40–1, at 44). Plaintiffs filed suit on February 28, 2014.  (Doc. 1).  Thus, plaintiff filed within the 15-year statute-of-repose and is not barred under Section 614.1(2A).  The Court notes, however, that the tolling provision of Section 614.1(2A)(b)(1) is not applicable here as plaintiff asserts.  There is no indication plaintiff's injuries or ailments were caused by "harmful material" as defined in the statute.  There is also no indication her alleged side effects were latent as required by the statute, as the Court will discuss further below.

### 2.    *Statute-of-Limitations*

Under Iowa law, "[t]he five-year statute of limitations governs actions for breach of implied warranty."  *See, e.g.*, *Richards v. Midland Brick Sales Co.*, 551 N.W.2d 649, 652 (Iowa Ct. App. 1996) (citing *Fell v. Kewanee Farm Equip. Co.*, 457 N.W.2d 911, 919 (Iowa 1990)).  Section 614.1(4) requires that actions based on implied warranty must be filed within five years after they accrue.  *Id.*  Generally, "[t]he discovery rule prevents the statute of limitations from commencing to run until such time as a plaintiff knows, or should have known through the exercise of reasonable diligence, of the injury sustained."

*John Q. Hammons Hotels, Inc. v. Acorn Window Sys., Inc.*, 394 F.3d 607, 610 (8th Cir. 2005). The discovery rule, however, applies only in limited circumstances. *See Richards*, 551 N.W.2d at 652. Indeed, Iowa Code Section 554.2725(2) states that "[a] cause of action [for a claim based on breach of a warranty] accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made[.]" The only exception to this rule is when "a warranty explicitly extends to future performance of the goods and discovery of the breach must wait the time of such performance," in which case "the cause of action accrues when the breach is or should have been discovered." IOWA CODE § 554.2725(2). Thus, when no warranty explicitly extends to future performance, the breach occurs and the claim begins to accrue when delivery is made regardless of the plaintiff's lack of knowledge. *See id.* This is true even in cases of implanted medical devices. *See, e.g.*, *Farrand v. Stryker Corp.*, No. 4:13-cv-00443-RAW, 2014 WL 11514684, at *8 n.7 (S.D Iowa Nov. 12, 2014) (breach of implied warranty claim is "clearly time barred"); *Sparks v. Wright Med. Tech., Inc.*, No. 12-CV-84-LRR, 2013 WL 1729211, at *4 (N.D. Iowa Apr. 22, 2013) ("Defendants breached the warranties . . . when [the plaintiff] received the hip transplant[.]"); *see also Evans v. Wright Med. Tech., Inc.*, 436 F. Supp. 3d 1207, 1214 (N.D. Iowa 2020) (same as to breach of express warranty claim).

Plaintiff alleges that the discovery rule applies to her implied warranty claim because her claim is based in common law, not statute. (Doc. 45, at 16). In support of her position, plaintiff cites a railroad case recognizing a common law implied warranty of fitness claim in the context of bailments. The case does not discuss the discovery rule. (*Id.*) (citing *Chi. Cent. & Pac. R.R. v. Union Pac. R.R.*, 558 N.W.2d 711 (Iowa 1997)). The context of the case is dissimilar from the facts here. The Court is not aware of any authority holding the discovery rule applies differently to claims for implied warranty depending on whether the claim arises from a statute or common law, if any such

19

distinction exists. To the contrary, the Iowa Supreme Court has held the discovery rule does not apply to implied warranty claims when "statutes expressly provide" otherwise, including Section 554.2725. *Brown v. Ellison*, 304 N.W.2d 197, 201 (Iowa 1981). Thus, the Court concludes that Section 554.2725 applies here and precludes application of the discovery rule.

Because the facts here do not show any explicit extension to future performance in any warranty, plaintiff's claim began to accrue when she received the TVT implant. Plaintiff filed her implied warranty claim nearly ten years after the implantation surgery, far outside the five-year statute-of-limitations. Even if the discovery rule applied, plaintiff knew or should have known about her alleged injuries long before the filing of this case in February 2014. Plaintiff experienced most of, if not all, the injuries and ailments she now complains of within several months of receiving her TVT implant. *See, e.g.* (Doc. 40–1, at 8–11) (containing plaintiff's expert's summary of her medical issues in the months and years immediately following her implantation surgery).

Plaintiff alternatively argues that the statute-of-limitations should be tolled due to defendants' fraudulent concealment. (Doc. 45, at 16–17). Fraudulent concealment requires that "(1) the defendant made a false representation or concealed material facts; (2) the plaintiff lacked knowledge of the true facts; (3) the defendant intended the plaintiff to act upon those representations; and (4) the plaintiff did rely on those representations." *Herbst v. Givaudan Flavors Corp.*, No. C17-4008-LTS, 2019 WL 6108098, at *4 (N.D. Iowa Aug. 19, 2019) (citation omitted). As previously discussed, plaintiff has not presented sufficient evidence that she or Dr. Bremner relied on any statements by defendants. Thus, plaintiff has not sufficiently stated any fraudulent concealment such that the statute-of-limitations should be tolled here.

Thus, the Court **grants** defendants' motion for summary judgment on plaintiff's implied warranty claim because it is barred by the five-year statute-of-limitations.[6]

### E. *Unjust Enrichment Claim*

Defendants argue plaintiff's unjust enrichment claim (Count XV) is improper because it "does not sound in contract or quasi-contract, but in tort[.]" (Doc. 39, at 14). Plaintiff argues her claim should not be dismissed merely because it sounds in tort. (Doc. 45, at 18–19). Plaintiff asserts it is unjust for defendants to retain the financial benefit of the sale of the TVT implant in light of her injuries. (*Id.*, at 19).

"Unjust enrichment is an equitable doctrine of restitution, wherein a plaintiff 'must prove the defendant received a benefit that in equity belongs to the plaintiff.'" *Iowa Network Servs., Inc. v. Quest Corp.*, 363 F.3d 683, 694 (8th Cir. 2004) (citing *Slade v. M.L.E. Inv. Co.*, 566 N.W.2d 503, 506 (Iowa 1997)). To prevail on a claim of unjust enrichment under Iowa law, a plaintiff must show "(1) [the] defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances." *State ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 154–55 (Iowa 2001). Such benefits can be direct or indirect. *Id.*, at 155. A claim of unjust enrichment "may arise from contracts, torts, or other predicate wrongs, or it may also serve as independent grounds for restitution in the absence of mistake, wrongdoing, or breach of contract." *Id.*, at 154.

The Court disagrees with defendants' characterization of unjust enrichment as a tort; it is more appropriately regarded as an equitable doctrine or quasi-contract. *See id.*

---

[6] Defendants also argue that plaintiff's fraud and warranty claims are duplicative of each other (Doc. 39, at 8–9). Defendants also argue that these claims and plaintiff's negligent misrepresentation claim are improper because they fail to show inducement. (*Id.*, at 9–10). In light of the Court's grant of summary judgment on other grounds, the Court need not consider these alternative arguments.

Defendants do not cite, and the Court is not aware of, any authority granting summary judgment on an unjust enrichment claim under similar circumstances. Further, Iowa law indicates that unjust enrichment can occur indirectly. *See id.*, at 155; *see also Midwest Media Grp., Inc. v. Fusion Entm't, Inc.*, No. 12-0189, 2012 WL 5541613, at *4 (Iowa Ct. App. Nov. 15, 2012) (holding there is no requirement that a defendant receive a direct benefit). The benefit conferred on defendants here is admittedly remote; plaintiff paid Dr. Bremner for the TVT implant who in turn purchased the implant from defendants. The Court cannot, however, find as a matter of law that this indirect benefit is insufficient to sustain an unjust enrichment claim.

Thus, defendants' motion for summary judgment is **denied** as to plaintiff's claim of unjust enrichment.

## V. CONCLUSION

For these reasons, the Court **grants in part** and **denies in part** defendants' Motion for Partial Summary Judgment. (Docs. 38 & 39).

The Court **grants** defendants' motion as to plaintiff's claims for negligence (Count I) as it relates to both negligent manufacturing defect and negligent failure to warn; strict liability for manufacturing defect (Count II); strict liability for failure to warn (Count III); strict liability for defective product (Count IV); strict liability for design defect (Count V); common law fraud (Count VI); fraudulent concealment (Count VII); constructive fraud (VIII); negligent misrepresentation (Count IX); breach of express warranty (Count XI); breach of implied warranty (Count XII); violation of consumer protection laws (Count XIII); and gross negligence (Count XIV).

22

The Court **denies** defendants' motion as to plaintiff's claims for negligence (Count I) to the extent it relates to negligent design; negligent infliction of emotional distress (Count X); and unjust enrichment (Count XV).[7]

**IT IS SO ORDERED** this 7th day of August, 2020.

_____
C.J. Williams
United States District Judge
Northern District of Iowa

---

[7] The Court notes that plaintiffs' other claims not addressed in defendants' motion, namely their claims for loss of consortium (XVI) and punitive damages (XVII), also remain.

23