IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| SUSAN KELLY and TIMOTHY KELLY, <br><br> Plaintiffs, <br><br> vs. <br><br> ETHICON, INC. and JOHNSON & JOHNSON, <br><br> Defendants. | No. 20-CV-2036-CJW-MAR <br><br><br> **ORDER** |

_____

Before the Court is Plaintiffs' Motion to Strike Defendants' Experts that Exceed the Five (5) Expert Limit Set Forth by Pre-Trial Order #328 and to Limit Defendants' Employees from Offering Expert Opinions, filed on June 10, 2020. (Doc. 74.) Defendants filed a timely Resistance. (Doc. 76.) Plaintiffs filed a timely reply. (Doc. 79.) No oral argument is necessary.

## I.   BACKGROUND

On February 4, 2019, the Honorable Joseph R. Goodwin entered Pretrial Order ("PTO") #328, which limited the parties to this multi-district litigation to "no more than five experts per case (exclusive of treating physicians)." (Doc. 15 at 4.) On June 2, 2020, Judge Goodwin transferred this case to the Northern District of Iowa for trial. (Doc. 62.)

## II.   THE PARTIES' CONTENTIONS

Plaintiffs contend that Defendants have violated PTO #328 by designating more than five experts. (Doc. 74-1.) Plaintiffs further contend that allowing Defendants to have more than five experts violates Federal Rule of Evidence 403 because of the

1

disparity of resources between the parties and the undue burden placed on Plaintiffs in discovering their opinions and attempting to counter them. Plaintiffs also contend the additional experts Defendants have designated will be cumulative and mislead the jury with the superior number of experts rather than the substance of their testimony. Plaintiffs further assert if Defendants are permitted additional experts, these experts will not have provided timely expert reports as required by Federal Rule of Civil Procedure 26(a)(2) and the MDL discovery deadline. Plaintiffs finally contend that Defendants' employees should be prohibited from offering expert opinions under Federal Rule of Evidence 701. Plaintiffs argue Defendants' additional experts should be stricken.

Defendants contend that PTO #328 should not be interpreted to exclude percipient witness testimony. Defendants further contend it was unnecessary for them to produce expert reports under Federal Rule of Civil Procedure 26 because their witnesses do not regularly testify as experts. Finally, Defendants disagree with Judge Goodwin's decision to limit expert witnesses and do not believe they should have to choose between retained experts and percipient witness testimony of their own employees.

### III. ANALYSIS

#### A. *The Applicable Rules.*

This dispute is largely governed by Federal Rules of Civil Procedure ("FRCP") 26 and 37 and Federal Rules of Evidence ("FRE") 403 and 701. FRCP 26 provides, in pertinent part:

> (2) Disclosure of Expert Testimony.
>    (A) In General. In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.
>    (B) Witnesses Who Must Provide a Written Report. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or

>   > specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:
>   > (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>   > (ii) the facts or data considered by the witness in forming them;
>   > (iii) any exhibits that will be used to summarize or support them;
>   > (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>   > (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>   > (vi) a statement of the compensation to be paid for the study and testimony in the case.

FRCP 37 provides, in pertinent part:

> (a) Motion for an Order Compelling Disclosure or Discovery.
>   > (3) Specific Motions.
>   >   > (A) To Compel Disclosure. If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions.
>   > (4) Evasive or Incomplete Disclosure, Answer, or Response. For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond.
> (c) Failure to Disclose, to Supplement an Earlier Response, or to Admit.
>   > (1) Failure to Disclose or Supplement. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

FRE 403 provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair

prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

FRE 701 provides:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
(a) rationally based on the witness's perception;
(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

### B. *Whether Defendants' experts that exceed the five (5) expert limit set forth by PTO #328 should be stricken.*

#### 1. *Whether there has been a significant change of circumstances.*

PTO #328 provides "the plaintiffs and each defendant are limited to no more than five experts per case (exclusive of treating physicians)." (Doc. 15 at 4.) Defendants have listed 16 non-retained experts (Doc. 74-3) and argue these experts should not be counted towards the expert limit because "the testimony they intend to offer is percipient in nature based upon their role in their jobs." (Doc. 76 at 4.) However, PTO #328 does not include any exception for experts who offer percipient testimony. (Doc. 15.) In fact, PTO #328 only allows Plaintiffs and Defendants to exceed the expert limit for "treating physicians." (Doc. 15 at 4.) To expand the scope of allowable expert testimony would undermine a principal purpose of the MDL process. *See* 28 U.S.C. § 1407 ("[T]ransfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."); 15 Arthur R. Miller, *Federal Practice and Procedure* § 3862 (4th ed. 2020) ("The objective of [Section 1407] was to provide centralized management under court supervision of pretrial proceedings in multidistrict litigation to assure the just and efficient conduct of such actions . . . ."). If the MDL

4

judge's pretrial orders can be circumvented by parties who do not wish to abide by them, much of the benefit derived from the MDL process is lost.

The Northern District of Illinois faced a similar issue in *IX Concentrate Blood Products Litigation*. 169 F.R.D. 632 (N.D. Ill. 1996). The plaintiffs in *IX Concentrate* requested an order limiting the number of expert witnesses the defendants could present. *Id.* at 635-36. The defendants contended that the MDL court lacked the authority under Section 1407 to limit the number of expert witnesses and that the trial judge, upon remand, was the only one who could make such an order. *Id.* at 636. The court disagreed, noting that the pretrial and trial stage

> are part of a continuum that results in resolution of the case, and the relationship between them is intimate. "Pretrial" proceedings are conducted to prepare for trial. A judge who has no power to impose limits as to what will happen at trial is obviously a judge who has little ability to manage pretrial proceedings in a meaningful way, since there would be no assurance that the judge's efforts are directed toward what is likely to happen at trial. That it is essential for the "pretrial" judge to have the authority to enter orders that will be binding as to the conduct of the trial is recognized by Rule 16(c)(2)(D), (13), (14) and (15), of the Federal Rules of Civil Procedure, which gives the judge conducting pretrial conferences authority to enter a variety of orders that will shape the conduct of the trial, including authority to limit the number of expert witnesses and to establish time limits for presenting evidence at trial. Rule 16 conferences are not necessarily conducted by the same district judge who will ultimately try the case; and some district judges routinely refer Rule 16 conferences to magistrate judges who, in the absence of consent by the parties, would not even be authorized to try the case.

*Id.* The court then reasoned if the MDL judge does not have "the authority to enter pretrial orders that will govern the conduct of the trial, there would be little prospect that the 'coordinated or consolidated pretrial proceedings' . . . would 'promote the just and efficient conduct of such actions.'" *Id.* at 636-37 (quoting 28 U.S.C. § 1407). The MDL process can only serve Section 1407's legislative purpose if the MDL judge has "the

5

same authority that any pretrial judge has to enter orders." *Id.* at 637. The court then held that the MDL judge has the authority to limit the number of expert witnesses. *Id.*

Other rulings are consistent with the *IX Concentrate* analysis. "As a general matter, the transferor court is bound, upon remand, by the orders entered by the transferee court during the coordinated or consolidated pretrial proceedings. Those decisions are considered law of the case." *In re Welding Fume Prod. Liab. Litig.*, No. 1:03-CV-17000, 2010 WL 7699456, at *2 (N.D. Ohio June 4, 2010) (quotation omitted); *see also* David F. Herr, *Multidistrict Litigation Manual* § 10:5 (2020) ("The transferor court (court to which the actions are remanded) receives the cases in the condition they are in at the time of remand. Decisions that have been made in the case continue to apply unless circumstances change warranting their modification. The decisions made by the transferee court are considered 'law of the case.'"); *id.* § 10:17 ("The assigned judge in [the transferor court] becomes a 'successor' judge to the transferee judge. The rulings made in the case to that date remain in effect and binding upon the parties.").

The general rule is that a successor judge must give deference to the decisions reached by the MDL judge, and "[t]his is particularly true for rulings which the transferee court could have itself modified." *Id.* "The point, of course, 'is not a matter of trying to tie the hands of the trial judge.' Rather, the law of the case doctrine . . . ensures that the transferor judge is not asked to re-plow ground already prepared by the MDL court for the efficient harvest of a verdict at trial." *In re Welding Fume Prod. Liab. Litig.*, No. 1:03-CV-17000, at *2 (quoting *IX Concentrate Blood Products Litigation*, 169 F.R.D at 637). Some courts and commentators have concluded that transferor judges cannot vacate the transferee judge's rulings. *See, e.g.*, *In re Food Lion, Inc., Fair Labor Standards Act Effective Scheduling Litig.*, 73 F.3d 528, 531 (4th Cir. 1996); Stanley A. Weigel, *The Judicial Panel on Multidistrict Litigation, Transferor Courts and Transferee Courts*, 78 F.R.D. 575, 577 (1978) ("It would be improper to permit a transferor judge

6

to overturn orders of a transferee judge even though error in the latter might result in reversal of the final judgment of the transferor court."). As mentioned above though, the "better rule" is considered to be the rule that the transferor judge can vacate or modify rulings made by the transferee judge when there has been "a significant change of circumstances." Herr, *supra*, § 10:17 (quoting *Manual for Complex Litigation* § 20.133, at 226 (4th ed. 2004)).

Defendants do not argue that there has been any "significant change of circumstances" since this case was remanded from the Southern District of West Virginia. Instead, Defendants essentially seek to have this Court address the same issues decided by Judge Goodwin and reach a contrary result. (Doc. 76 at 4.) Defendants seek to relitigate the issue because "the MDL court did not undertake a thorough analysis or appreciate the full impact of its decision to include Ethicon employees as expert witnesses for purposes of the five-expert limited." (*Id.* at 3.)

I decline the invitation to revisit Judge Goodwin's decision. Judge Goodwin stated that "[i]n light of the products involved in this Wave, the likelihood of overlap in expert opinion from one case to another (except as to specific causation) and the need to streamline discovery in these cases, the plaintiffs and each defendant are limited to no more than five experts per case (exclusive of treating physicians)." (Doc. 15 at 4.) This statement shows that Judge Goodwin considered the principles Section 1407 seeks to promote: justice and efficiency. *See* 28 U.S.C. § 1407. Regardless, I will not disturb Judge Goodwin's order as there is no evidence that circumstances have changed in the time that has elapsed since PTO #328 was filed on February 4, 2019. (Doc. 15.) As noted above, the Court also owes Judge Goodwin's order considerable deference because, *inter alia*, he had a chance to modify his order when he ruled on Plaintiffs' Motion to Strike Defendant's Non-Retained Experts on January 12, 2017. (Doc. 74-6.); Herr,

7

Case 6:20-cv-02036-CJW-MAR Document 91 Filed 10/07/20 Page 7 of 14

*supra*, § 10:17. For those reasons, I conclude there has been no significant change of circumstances and thus Plaintiffs' motion will be granted.

### 2. *Defendants' non-retained experts violate FRE 403.*

Defendants designation of 16 non-retained experts also violates FRE 403 as the probative value of the testimony is substantially outweighed by the dangers of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, and needlessly presenting cumulative evidence. As shown below, the probative value of the non-retained experts' testimony is minimal at best. The non-retained experts' testimony appears repetitive and does not go beyond what Defendants' retained experts will say. *Compare* (Doc. 79 at 46) (showing retained expert Dr. Woods stating that TVT is "safe and effective"), *with* (Doc. 74-3 at 18) (showing non-retained expert Dr. Kirkemo stating that "TVT is safe and effective").

Defendants argue that the disparity in the number of experts testifying "is not as great as Plaintiffs argue and certainly does not create undue prejudice under [FRE 403]" because Plaintiffs have also designated ten treating physicians as experts. (Doc. 76 at 6 n.4.) However, Defendants have had the advantage in knowing that since PTO #328 was filed Plaintiffs were able to designate treating physicians as experts in excess of the limitation. Plaintiffs, on the other hand, have been preparing for trial with the expectation that Defendants would not be allowed more than five experts. To change course now and allow Defendants to include 16 non-retained expert witnesses would disrupt the orderly preparation for trial and require them to spend considerable resources to prepare a rebuttal for these experts.

Allowing Defendants to exceed the limitation on expert witnesses also presents a considerable risk of confusing the issues and misleading the jury. Defendants themselves note that their non-retained experts possess "scientific, technical and/or medical training and expertise" and "are medical doctors, preclinical specialists, Ph.D.s and/or engineers"

8

that will testify based on their "scientific/specialized knowledge gained during the course of their employment." (*Id.* at 4.) Having these 16 non-retained experts testify along with the five retained experts will require the jury to hear multiple experts testify using terminology and technical concepts that are generally outside the layperson's knowledge. For example, Defendants expect Dr. Arnaud to "opine that mid-urethral slings with either a retropubic or transobturator pass, including TVT and TVT-O are the standard of care for SUI." (Doc. 74-3 at 13.) Requiring the jury to listen to 21 defense experts use similar technical language poses a high risk for confusing the issues and misleading the jury at trial.[1] It also poses the risk that the jury will be overwhelmed by the quantity of evidence, rather than be persuaded by the quality of it.

Most importantly, Defendants' 16 non-retained experts presents a high danger of causing undue delay, wasting time, and needlessly presenting cumulative evidence. Judge Goodwin noted these very dangers when he stated that "the likelihood of overlap in expert opinion from one case to another" necessitated limiting the parties' experts to no more than five. (Doc. 15 at 4); (Doc. 48 at 1) ("Upon transfer, I urge the receiving court to immediately set these cases for trial without reopening discovery. Further discovery will only result in unjust delay. Extensive development of these cases over a period of years has made such further action completely unnecessary."). Plaintiffs illustrate the cumulative nature of the non-retained experts' testimony in their reply brief. *See* (Doc. 79 at 5-7). Essentially, Defendants' non-retained experts will be repeatedly testifying that the benefits of TVT far outweigh the risks, mesh is not the problem, incontinence affects a woman's quality of life, and traditional procedures were much more problematic. *See* (Doc. 74-3); (*id.* at 4) ("More specifically, [Dr. Hinoul will testify] incontinence is a prevalent condition that can severely affect a women's quality of life.");

---

[1] This risk may even be understated, as Defendants' non-retained expert disclosures are summaries prepared by counsel and not Rule 26 written reports. (Doc. 74-3.)

9

(*id.* at 11) ("[Dr. Arnaud] will testify that incontinence is a prevalent condition that can severely affect a woman's quality of life."); (*id.* at 15) ("[Dr. Robinson] will testify that incontinence is a prevalent condition that can severely affect a woman's quality of life."). For these reasons, I conclude that Defendants' designation of non-retained experts also violates FRE 403.

### 3. *Defendants' non-retained experts have not provided written reports as required by Rule 26.*

Defendants' non-retained expert witnesses have also not provided written reports under FRCP 26. FRCP 26(a)(2)(B) states:

> Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony.

In *Greenhaw v. City of Cedar Rapids, Iowa*, this Court addressed the issue of when a written report is required by FRCP 26(a)(2)(B). 255 F.R.D. 484 (N.D. Iowa 2009). "As written, [FRCP] 26(a)(2)(B) only requires a written report to accompany the identification of an expert witness if the witness is 'retained or specially employed' to provide expert testimony, or is 'one whose duties as the party's employee regularly involve giving expert testimony.'" *Id.* at 488 (adopting the view of *Navajo Nation v. Norris*, 189 F.R.D. 610 (E.D. Wash. 1999)). This Court did not reach the issue of when an employee's duties qualify as one that regularly involves giving expert testimony, however. *See id.* *Navajo Nation*, the case expressly adopted by this Court, stated "those employees who do not regularly testify for the employer but are doing so in a particular case need not provide the [written] report." 189 F.R.D. 610, 612.

In *Phillip M. Adams & Associates, L.L.C. v. Fujitsu Ltd.*, the District Court of Utah was tasked with determining whether the plaintiff's employee's duties involved

10

regularly giving expert testimony as the employee had testified as an expert in other cases. *See* 1:05-CV-64 TS, 2010 WL 2640264, at *3 (D. Utah June 25, 2010). The plaintiff argued that the employee was not required to submit a written report under FRCP 26(a)(2)(B) because of the seven separate cases the employee had testified as an expert in, only two were arguably on behalf of the plaintiff. *Id.* at *1, *3. The court read FRCP 26(a)(2)(B) "to require an expert report from an employee-expert only when the witness is the functional equivalent of a hired professional expert." *Id.* at *3. The court then concluded that an employee-expert that has only arguably testified on behalf of their employer in two cases is not the functional equivalent of a hired professional expert and is not required to submit a written report. *See id.* ("The rule is not meant to embrace [the employee-expert] who has testified twice for his employer and several times for others on related issues.").

Defendants argue these non-retained experts were not required to submit a written report because they believe Plaintiffs have "not shown that these witnesses 'regularly' provide expert testimony as part of their employment." (Doc. 76 at 8.) Defendants' own non-retained expert disclosures refute this argument and show that these experts do regularly give expert testimony. *See* (Doc. 74-3.) These non-retained experts are identified for all cases involving the TVT device and Defendants are unwilling to assert that these witnesses do not regularly provide expert testimony. (*Id.*); *see* (Doc. 76 at 8.); *see also Greenhaw*, 255 F.R.D. at 486 (N.D. Iowa 2009) (finding that the defendant's expert did not have to provide a written report because the defendant asserted the expert "does not regularly give expert testimony" and this point was undisputed). This also is not a close call as seen in *Fujitsu* where the plaintiff's employee-expert had arguably only testified in two cases for the employer. 2010 WL 2640264, at *3. These employee-experts are designated in all MDL cases involving the TVT device. (Doc. 74-3.) Accordingly, I find that Defendants' non-retained experts have not provided expert

11

reports as required by FRCP 26(a)(2)(B) and must be stricken. Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information . . . as required by [FRCP] 26(a) . . . the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

### C.     *There is no due process violation.*

Defendants argue that the limitation on expert witnesses violates their "federal due process right to present a defense and offer rebuttal testimony in this case." (Doc. 76 at 7.) In support of their position, Defendants cite a number of cases where courts have addressed a party's due process rights in the context of civil proceedings. None of those cases are particularly on point. *Consolidation Coal Co. v. Local Union No. 1784, United Mine Workers of Am.* supports the unquestionable principal that parties in every judicial proceeding are entitled to "proper notice and an impartial hearing with an opportunity to present a defense." 514 F.2d 763, 765 (6th Cir. 1975). *Londoner v. City & County of Denver*, 210 U.S.373, 386 (1908) supports the conclusion that "a hearing, in its very essence, demands that he who is entitled to it shall have the right to support his allegations by argument, however brief: and, if need be, by proof, however informal." These cases do not, however, provide much substance regarding the more particular issue at hand; that is, whether limiting the number of expert witnesses a party can call violates due process.

I respectfully disagree with Defendants' conclusion there is any due process violation inherent in the order limiting witnesses in this case. Parties' presentation of evidence at trial is constrained in many ways that serve to ensure their right to due process is protected. For example, the Federal Rules of Evidence limit the admission of evidence to eliminate unjustifiable expense and delay, unfair prejudice, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 102, 403. Concomitantly, the Federal Rules of Civil Procedure "are to be construed, administered, and employed by the court

12

and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. The limitations imposed by Judge Goodwin's order promote all of these goals.

Defendants can still present a defense and offer rebuttal testimony. The fact that Defendants are limited in the number of expert witnesses they may call does not result in a violation of their due process rights. Rather, failing to impose reasonable limits on the number of experts called would pose an undue burden on the parties in discovery and the Court at trial, as well as undermining the MDL process. For these reasons, I find the Defendants' right to due process has not been violated.

### D. *Defendants' employees may still testify as lay witnesses.*

Defendants' employees are not wholly prohibited from testifying. Defendants' employees are still permitted to testify as lay witnesses but are limited to testimony that is "rationally based on the witness's perception, helpful to clearly understanding the witness's testimony or to determining a fact in issue, and not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701; *see also United States v. Espino*, 317 F.3d 788, 797 (8th Cir. 2003) ("The general application of Rule 701 indicates that a lay witness may testify about facts within his or her range of generalized knowledge, experience, and perception."). However, the employees' testimony as lay witnesses may still be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

13

## IV. CONCLUSION

Plaintiffs' Motion to Strike Defendants' Experts that Exceed the Five (5) Expert Limit Set Forth by Pre-Trial Order #328 and to Limit Defendants' Employees from Offering Expert Opinion **(Doc. 74)** is **GRANTED**.

**IT IS SO ORDERED** this 7th day of October, 2020.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa