# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

SUSAN KELLY; and TIMOTHY KELLY,

        Plaintiffs,

vs.

ETHICON, INC.; and JOHNSON & JOHNSON,

        Defendants.

No. 20-CV-2036-CJW-MAR

**MEMORANDUM OPINION AND ORDER**

---

## TABLE OF CONTENTS

I.     INTRODUCTION ……………………………………………………… 3

II.    RELEVANT BACKGROUND ……………………………………… 3

III.   PLAINTIFFS' MOTION FOR LEAVE TO TAKE THE DEPOSITION OF RANDALL BREMNER, M.D. ………………………………………… 6

    A.    Applicable Law……………………………………………… 6

    B.    Analysis……………………………………………………… 7

IV.   PLAINTIFFS' MOTION TO RECONSIDER THIS COURT'S ORDER ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ………10

    A.    Applicable Law………………………………………………10

    B.    Analysis………………………………………………………12

1.      Strict Liability for Design Defect ......................................12

2.      Negligent Failure to Warn ...............................................14

        a.      Application of the Learned Intermediary Doctrine ..........14

        b.      Exception to the Learned Intermediary Doctrine............16

        c.      Post-Sale Duty to Warn .......................................18

3.      Negligent Misrepresentation .............................................21

4.      Fraud-Based Claims ......................................................22

5.      Loss of Consortium.......................................................22

V.      DEFENDANTS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL
        MOTION FOR SUMMARY JUDGMENT ON THE STATUTE OF
        LIMITATIONS .............................................................23

        A.      Applicable Law..................................................23

        B.      Analysis.........................................................24

VI.     CONCLUSION .............................................................29

# I.  INTRODUCTION

This matter is before the Court on plaintiffs Susan Kelly ("plaintiff") and Timothy Kelly's ("Timothy") (collectively "plaintiffs") Motion for Leave to Take the Deposition of Randall Bremner, M.D. ("Dr. Bremner") (Doc. 83) and plaintiffs' Motion to Reconsider and Amend this Court's Memorandum Opinion and Order on Defendants' Motion for Summary Judgment (Doc. 84).  As to both motions, defendants Johnson & Johnson and Ethicon, Inc. ("Ethicon") timely resisted and plaintiffs timely replied. (Docs. 87, 88, 89, & 90).  For the following reasons, the Court **denies** both of plaintiffs' motions.

This matter is also before the Court on defendants' Motion for Leave to File Supplemental Motion for Summary Judgment on the Statute of Limitations.  (Doc. 82). Plaintiffs timely resisted and defendants timely replied.  (Docs. 85 & 86).  For the following reasons, the Court **grants** defendants' motion.

The Court will address each motion below in the following order: (1) plaintiffs' motion for leave to depose Dr. Bremner (Doc. 83); (2) plaintiffs' motion for reconsideration (Doc. 84); and (3) defendants' motion for leave to file a supplemental motion for summary judgment (Doc. 82).

# II.  RELEVANT BACKGROUND

Plaintiffs have resided in Iowa since at least 1990.  (Doc. 38–1, at 3).  Johnson & Johnson and its subsidiary Ethicon are both New Jersey corporations.  (Doc. 1-1, at 1).

On March 7, 2004, plaintiff received a tension-free vaginal tape ("TVT") mesh implant manufactured by Ethicon.  *See* (Doc. 39, at 2).  Plaintiff's implantation procedure took place in Waterloo, Iowa.  (*Id.*).  Plaintiff received the implant to stabilize her prolapsed bladder.  (Doc. 40-1, at 44).  Dr. Bremner performed the procedure.  (Doc. 39, at 2).  Plaintiff testified that she does not remember receiving any brochures, handouts, or other materials about the TVT implant before her surgery, that she did not

know who manufactured the implant, and that she did not rely on any statements by defendants in selecting it. (*Id.*, at 2–3; Doc. 45, at 3–4). Plaintiff, however, states that Dr. Bremner failed to inform her of the potential risks posed by the TVT implant and that she relied on his advice. (Doc. 45, at 3–6). Plaintiff states she was only informed of the risks posed by the implant procedure and not the TVT implant itself. (*Id.*, at 5). Plaintiff alleges that, as a result of her TVT implant corroding, oxidizing, or eroding, she has suffered from, among other things, "depression, pelvic pain, dyspareunia, loss of services of her spouse, continued and worsening incontinence, [urinary tract infections], urinary retention, abdominal pain, urgency, frequency, and dysuria." (*Id.*, at 4) (citing plaintiff's deposition testimony).

On February 28, 2014, plaintiffs filed suit in the multidistrict litigation ("MDL") related to defendants' TVT implant in the United States District Court for the Southern District of West Virginia. (Doc. 1). Plaintiffs asserted 17 claims consisting of: negligence (Count I); strict liability for a manufacturing defect (Count II); strict liability for failure to warn (Count III); strict liability for a defective product (Count IV); strict liability for a design defect (Count V); common law fraud (Count VI); fraudulent concealment (Count VII); constructive fraud (Count VIII); negligent misrepresentation (Count IX); negligent infliction of emotional distress (Count X); breach of express warranty (Count XI); breach of implied warranty (Count XII); violation of consumer protection laws (Count XIII); gross negligence (Count XIV); unjust enrichment (Count XV); loss of consortium (Count XVI); and punitive damages (Count XVII). (*Id.*).[1] On September 17, 2014, plaintiff had part of her TVT implant removed in Iowa City, Iowa by Dr. Elizabeth Takacs. (Docs. 39, at 2; 45, at 3).

---

[1] As previously noted, Timothy's only claim is for loss of consortium. (Doc. 81, at 4 n.1).

On August 9, 2019, defendants moved for partial summary judgment on plaintiff's claims for negligence (to the extent it asserted claims for negligent failure to warn or negligent manufacturing defect) (Count I), strict liability for manufacturing defect (Count II), strict liability for failure to warn (Count III), strict liability for defective product (Count IV), strict liability for design defect (Count V), common law fraud (Count VI), fraudulent concealment (Count VII), constructive fraud (VIII), negligent misrepresentation (Count IX), negligent infliction of emotional distress (Count X), breach of express warranty (Count XI), breach of implied warranty (Count XII), violation of consumer protection laws (Count XIII), gross negligence (Count XIV), and unjust enrichment (Count XV). (Doc. 38, at 1). On August 28, 2019, plaintiffs timely filed a resistance. (Doc. 45).

On June 2, 2020, this case was transferred from the Southern District of West Virginia to this Court. (Doc. 62). On August 7, 2020, the Court granted in part and denied in part defendants' motion for partial summary judgment. (Doc. 81). The Court granted summary judgment on plaintiff's claims for negligence (as it relates to negligent failure to warn and negligent manufacturing defect) (Count I); strict liability for manufacturing defect (Count II); strict liability for failure to warn (Count III); strict liability for defective product (Count IV); strict liability for design defect (Count V); common law fraud (Count VI); fraudulent concealment (Count VII); constructive fraud (VIII); negligent misrepresentation (Count IX); breach of express warranty (Count XI); breach of implied warranty (Count XII); violation of consumer protection laws (Count XIII); and gross negligence (Count XIV). (*Id.*, at 22). It denied summary judgment on plaintiff's claims for negligence (as it relates to negligent design) (Count I); negligent infliction of emotional distress (Count X); and unjust enrichment (Count XV). (*Id.*, at 23). Defendants did not request, and the Court did not grant, summary judgment on plaintiffs' claims for loss of consortium (Count XVI) and punitive damages (Count XVII).

### III. PLAINTIFFS' MOTION FOR LEAVE TO TAKE THE DEPOSITION OF RANDALL BREMNER, M.D.

#### A. Applicable Law

Most courts in the Eighth Circuit have analyzed a motion for leave to take a deposition after the close of discovery under Federal Rule of Civil Procedure 16(b). *See, e.g., Bell v. Mine Safety Appliances*, No. 1:13-cv-01075, 2015 U.S. Dist. LEXIS 178459, at \*2–3 (W.D. Ark. Nov. 17, 2015); *Optimal Interiors, LLC v. Hon Co.*, No. 3:09-cv-00177-JEG-RAW, 2011 WL 13308179, at \*1 (S.D. Iowa Mar. 7, 2011). Rule 16(b) states that a court must issue a scheduling order which sets deadlines for, among other things, discovery. FED. R. CIV. P. 16(b)(3). Rule 16(b)(4) states that "[a] schedule may be modified only for good cause and with the judge's consent." Thus, courts generally employ a flexible good cause standard when evaluating a motion for leave to take a late deposition. *See, e.g., Bell*, 2015 U.S. Dist. LEXIS 178459, at \*2–3 (finding the defendants did not show good cause); *Hon Co.*, 2011 WL 13308179, at \*1 ("When a dispute arises and a party requests leave to take trial depositions after the discovery deadline, a certain amount of flexibility in application of [Rule] 16(b)(4) good cause standard is often in order to assure basic fairness and presentation of a full record to the fact finder.").

"The primary measure of [the] 'good cause' standard is the moving party's diligence in attempting to meet the [scheduling] order's requirements." *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.1992)). Nevertheless, even if the movant shows good cause, the court "retains discretion as to whether to grant the motion" because the scheduling order is "a vehicle designed to streamline the flow of litigation through our crowded dockets." *Id.* (citing *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 437 (8th Cir.1999)).

Some courts in the Eighth Circuit have, however, applied Federal Rule of Civil Procedure 60(b) instead of Rule 16(b) in ruling on a motion to take an untimely deposition. *See, e.g.*, *Pippin v. Hill-Rom Co.*, No. 4:08CV263 TIA, 2008 WL 4911800, at *1 (E.D. Mo. Nov. 13, 2008) (finding that Federal Rule of Civil Procedure 60(b) "can allow a party to complete an act [after] the deadline has passed"). Rule 60(b) provides several different equitable grounds for relief, namely:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

These bases of relief under 60(b), given their equitable nature, are consistent with the flexible good cause analysis and discretion described by other courts in the Eighth Circuit discussing Rule 16(b). Thus, the Court's analysis would be the same under either rule; the Court must identify some good cause or quality of equity that, in its discretion, warrants extension of the deposition deadline set in the scheduling order.

### B.    *Analysis*

Plaintiffs filed their complaint in the MDL on February 28, 2014. (Doc. 1). On February 4, 2019, the MDL court entered an order setting August 1, 2019, as the "[d]eposition deadline and close of discovery." (Doc. 15, at 3). This order also limited depositions of treating physicians to four, three-hour depositions for each case. (*Id.*, at 4). Despite this opportunity, plaintiffs never deposed Dr. Bremner or any other treating physician. (Doc. 83-1, at 2 n.1). It is not clear to the Court when plaintiffs were prompted to begin case-specific discovery. At worst, they had five and a half years from

7

the date they filed their complaint to depose Dr. Bremner. Even assuming, however, that plaintiffs could not depose Dr. Bremner until the MDL court's February 4, 2019 Order, plaintiffs still had half a year to get it done.

On August 9, 2019, after the close of discovery, defendants moved for partial summary judgment. (Doc. 38). Following transfer, the Court granted in part defendants' motion for partial summary judgment on August 7, 2020, nearly a year later. (Doc. 81). Defendants motion for partial summary judgment explicitly pointed out that plaintiffs had not deposed Dr. Bremner. *See, e.g.*, (Doc. 39, at 7–8). Although it would have been untimely, plaintiffs did not move to depose Dr. Bremner to supplement the record at any time before this Court's summary judgment Order. Now, a month and a half after the Court's summary judgment Order, plaintiffs request leave to depose Dr. Bremner. (Doc. 83). On its face, plaintiffs are excessively tardy in requesting Dr. Bremner's deposition more than a year after the close of discovery and even after the Court's summary judgment Order issued.

Despite this substantial delay, plaintiffs offer little explanation of good cause or any other viable excuse. First, plaintiffs' counsel appears to place part of the blame on his caseload related to the MDL, stating "counsel had a total of twenty-six (26) cases selected for work-up and litigation within Wave 11 [of the MDL], the majority of which underwent discovery as best as feasibly possible." (Doc. 83-1, at 1–2). Counsel's personal workload is no excuse. Plaintiffs had an ample opportunity to obtain Dr. Bremner's testimony in some form over the course of, at best, six months. In sum, having other cases to juggle is not good cause for failing to conduct fundamental discovery and does not warrant backtracking this case.

Second, plaintiffs argue that despite their efforts, they could not locate Dr. Bremner during the discovery period. (*Id.*, at 2); *see also* (Doc. 89, at 2–3). On August 10, 2020 (three days after this Court granted partial summary judgment), however,

plaintiffs obtained an address for Dr. Bremner by performing a "skip trace." (Doc. 83-1, at 2). On August 14, 2020, plaintiffs sent Dr. Bremner a letter. (*Id.*). On August 26, 2020, Dr. Bremner responded to plaintiffs and agreed to a potential deposition in October. (*Id.*). The Court is highly skeptical that Dr. Bremner could not have been timely reached during the discovery period with diligent effort. Dr. Bremner was only partially retired and, thus, must have been publicly accessible to some extent. *See* (*id.*). Even if Dr. Bremner was not easily publicly accessible, plaintiffs fail to explain why a skip trace could not have been performed earlier or why social media, public records, or other documents failed to yield any means of contacting him. That plaintiffs were able to find Dr. Bremner's address three days after this Court's Order itself indicates Dr. Bremner could have been contacted with reasonable effort and, it appears, would have agreed to being deposed. Thus, this excuse also does not constitute good cause.

Last, plaintiffs reiterate that Dr. Bremner's testimony is pivotal to some of their claims. (Doc. 83-1, at 2–3, 4). This is undoubtedly true. The Court granted summary judgment on several claims in part because the record did not contain any evidence of Dr. Bremner's decisions and conduct regarding the TVT implant. The Court's concern here is not, however, whether Dr. Bremner's deposition would be duplicative, burdensome, or costly as plaintiffs discuss. (*Id.*, at 4–6). Rather, the Court's concern is plaintiffs' failure to take Dr. Bremner's deposition in a timely fashion. Plaintiffs note that "the issues in this case have been litigated for more than six (6) years" and thus, they should "have the opportunity to obtain complete evidence." (*Id.*, at 6). As discussed, plaintiffs have failed to show good cause as to why this deposition could not have taken place at any time during discovery. In other words, plaintiffs had their opportunity to complete the evidence, but failed to seize it.

Indeed, it would be highly prejudicial to defendants to backtrack a year's worth of litigation by undoing the Court's grant of partial summary judgment, reinstating some of

plaintiffs' claims, and requiring defendants to participate in a deposition that could have taken place a year and a half ago or more.

The additional discovery plaintiffs seek from Dr. Bremner also does not warrant his untimely deposition. *See* (*id.*, at 4–5). In its summary judgment Order, the Court noted that plaintiffs' failure to depose Dr. Bremner, although serious, was not inherently fatal because other evidence could exist—such as a note or publication authored by Dr. Bremner about TVT implants—which could indicate that Dr. Bremner would have changed his decision if given different warnings. (Doc. 81, at 10–11). The Court concluded, however, that no such evidence existed in the record. (*Id.*, at 11). Now, plaintiff argues she should be able to depose Dr. Bremner to discover whether such notes or publications exist. (Doc. 84-1, at 6–7). The Court declines to stretch its hypothetical discussion into a basis for purely speculative discovery. *See* (Doc. 83-1, at 4–5) (stating that plaintiff has no reason to believe these documents even exist—in fact, the opposite); (Doc. 89, at 3) ("It is highly unlikely that this information even exists."). As discussed above, the Court finds that plaintiffs' failure to depose Dr. Bremner before the close of discovery does not warrant re-opening these already resolved issues.

In sum, the Court finds that plaintiffs have not shown good cause or any other equitable reason why the Court should substantially alter the course of this case to allow plaintiffs to conduct a deposition that they already had an ample opportunity to conduct. Thus, the Court **denies** plaintiffs' motion for leave to depose Dr. Bremner. (Doc. 83).

## IV. *PLAINTIFFS' MOTION TO RECONSIDER THIS COURT'S ORDER ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT*

### A. *Applicable Law*

Generally, Federal Rules of Civil Procedure 59(e) and 60(b) apply to a motion to reconsider a court's grant of summary judgment. Rule 59(e) enables parties to submit a motion to alter or amend a judgment within 28 days of the judgment's entry. "A district

court has broad discretion in determining whether to grant or deny a motion to alter or amend judgment pursuant to Rule 59(e)[.]" *United States v. Metropolitan St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006). "Rule 59(e) motions serve the limited function of correcting manifest errors of law or fact[.]" *Id.* (citation and internal quotation marks omitted). Rule 59(e) motions should "also be granted where the court overlooked a factual or legal argument presented by a party, but not where a party failed to present a relevant factual or legal argument to the court in the first instance." *Stults v. Bush Boake Allen, Inc.*, No. C11-4077-MWB, 2014 WL 775525, at *2 (N.D. Iowa Feb. 25, 2014) (citations and emphasis omitted). Rule 60(b), as discussed above, enables a court to provide relief from a final judgment in a limited set of circumstances.

Admittedly, "the Federal Rules of Civil Procedure do not seem to provide any basis for a motion to reconsider [a] court's granting of a *partial* summary judgment[.]" *Helm Fin. Corp. v. Iowa N. Ry. Co.*, 214 F. Supp. 2d 934, 999 (N.D. Iowa 2002) (emphasis altered). Courts have found, however, that the absence of this relief in the Federal Rules "means that [the] court actually has more, rather than less, discretion to alter or amend such an interlocutory order than is provided in either Rule 59(e) or 60(b)[.]" *Id.* Like the denial of a summary judgment motion, the court retains the power to reconsider or amend its ruling "up until the time a final judgment is entered." *Id.* Thus, a court has discretion to reconsider challenged portions of an order granting partial summary judgment. *Id.* In doing so, a court is not bound by the specifications and standards of Rules 59(e) and 60(b). *EEOC v. Am. Home Prods. Corp.*, 165 F. Supp. 2d 886, 891–92 (N.D. Iowa 2001) (citations omitted).

### B.      Analysis

Plaintiffs request the Court reconsider or amend its Order on defendants' Motion for Partial Summary Judgment in five respects. (Doc. 84-1, at 4–14).[2] First, plaintiff argues that under Iowa law her claim for strict liability for design defect may not be subsumed by her claim for negligent design defect and thus, she withdraws her abandonment of this claim. (*Id.*, at 4–6). Second, plaintiff argues the learned intermediary doctrine does not apply to her negligent failure to warn claim, or alternatively, that exceptions to the doctrine apply, or that defendants violated a post-sale duty to warn. (*Id.*, at 6–10). Third, plaintiff argues her negligent misrepresentation claim should be allowed to proceed due to defendants' alleged misrepresentations or fraudulent behavior. (*Id.*, at 10–12). Fourth, plaintiff argues she sufficiently stated her fraud claims. (*Id.*, at 12–13). Last, Timothy appears to request some type of relief related to his claim for loss of consortium, even though the Court's Order did not affect his claim. (*Id.*, at 13–14).

#### 1.      Strict Liability for Design Defect

In response to defendants' motion for partial summary judgment, plaintiff did not oppose granting summary judgment on her claim of strict liability for design defect, or her other two strict liability claims. (Doc. 45, at 7–8). Thus, the Court granted summary judgment on plaintiff's claim for strict liability for design defect. (Doc. 81, at 7).

---

[2] Although Rule 59(e) does not apply here, as plaintiffs agree (Doc. 84-1, at 3–4), the timeliness of plaintiffs' motion is still a "valid consideration" that the Court can take into account, *see Am. Home Prods. Corp.*, 165 F. Supp. 2d at 892 (quoting *Deimer v. Cincinnati Sub-Zero Prods., Inc.*, 990 F.2d 342, 346 (7th Cir. 1993) (noting that the movant's tardiness was still a valid consideration). Here, plaintiffs filed their motion to reconsider 40 days after the Court granted in part defendants' partial motion for summary judgment (Docs. 81 & 84), far outside the usual 28-day window of Rule 59(e). Although the Court declines to incorporate this fact into its analysis, plaintiffs' delay in reasserting issues that have already been addressed is detrimental to a speedy resolution of the remaining claims.

Now, plaintiff argues that her strict liability for design defect claim may not be subsumed by her negligent design defect claim as previously thought. (Doc. 84-1, at 4–6). Plaintiff further states, without citation, that "[i]t appears that your Honor is of the position that [plaintiff]'s Strict Liability – Design Defect claim did not merge with her Negligent Design claim." (*Id.*, at 6). Thus, plaintiff "withdraws her abandonment as to this claim" and asserts it is factually supported by expert testimony. (*Id.*).

Plaintiff's argument relies on outdated authority. "The Iowa Supreme Court has . . . held that design defect claims are not strict liability claims." *Wurster v. Plastics Grp., Inc.*, 917 F.3d 608, 615 (8th Cir. 2019) (citing *Scott v. Dutton-Lainson Co.*, 774 N.W.2d 501, 505 (Iowa 2009)). Indeed, in *Wright v. Brooke Group, Ltd.*, the Iowa Supreme Court stated that "negligence principles are more suitable for" all defective design cases aside from manufacturing defects, which require a strict liability analysis. 652 N.W.2d 159, 169 (Iowa 2002); *see also Scott*, 774 N.W.2d at 504 (discussing *Wright*). Despite this, the Iowa Supreme Court expressed its reluctance to affix any doctrinal label to design defect claims. *Wright*, 652 N.W.2d at 169. Instead, the court found that negligent design defect and strict liability for design defect were not meaningfully distinct and should not be presented in tandem to a jury. *Id.* Thus, when both design defect theories are asserted, this Court has merged them into a single design defect claim. *See, e.g.*, *Nicholson v. Biomet, Inc.*, No. 18-CV-3057-CJW-KEM, 2020 WL 3399899, at *19 (N.D. Iowa Mar. 6, 2020).

Plaintiff's request is moot. The Court did not grant summary judgment on plaintiff's claim for negligent design defect. (Doc. 81, at 12). Thus, even if the Court accepted plaintiff's withdrawal of her abandonment of her strict liability for design defect claim, reversed summary judgment, and reinstated the claim, it would merely merge into her already viable claim for negligent design defect. Whether this surviving claim is

13

labelled as negligent design defect or simply design defect is immaterial; both terms are consistent with Iowa law.  *See Wright*, 652 N.W.2d at 169.

Thus, the Court **denies as moot** plaintiff's motion on this issue.

### 2.    *Negligent Failure to Warn*

In its Order on defendants' motion for partial summary judgment, the Court granted summary judgment on plaintiff's negligent failure to warn claim because there was no evidence of proximate causation.  (Doc. 81, at 9–12).  Specifically, under the learned intermediary doctrine, the Court found that plaintiff had not shown that different warnings by defendants would have changed Dr. Bremner's decision to use the TVT implant or how he explained the risks to plaintiff.  (*Id.*, at 10–12).

Now, plaintiff argues (1) that the learned intermediary doctrine does not apply or, alternatively, (2) that exceptions to the doctrine apply, or (3) defendants had a continuing duty to warn even after the sale of the TVT implant.  (Doc. 84-1, at 6–10).  The Court will address each argument in turn.

### a.    *Application of the Learned Intermediary Doctrine*

Plaintiff argues the learned intermediary doctrine does not apply here.  (Doc. 84-1, at 6–7) (citing *Mercer v. Pittway Corp.*, 616 N.W.2d 602, 624 (Iowa 2000) (involving litigation over a smoke detector); *Lovick v. Wil-Rich*, 588 N.W.2d 688, 700 (Iowa 1999) (involving litigation over a farm cultivator)).  Because plaintiff asserts she would not have consented to the TVT implant if different warnings were given, plaintiff argues the Court should reinstate her negligent failure to warn claim.  (*Id.*).

"[I]n the context of prescription medical devices and drugs, Iowa follows the learned intermediary doctrine."  *Willet v. Johnson & Johnson*, No. 112-CV-00034-JAJ-RAW, 2019 WL 7500524, at *2 (applying the learned intermediary doctrine under Iowa law in a case arising from the same MDL).  Although Iowa has not explicitly adopted the learned intermediary doctrine, its use is firmly established:

14

> Iowa courts have not explicitly adopted the learned intermediary doctrine. The Iowa Supreme Court has, however, acknowledged the learned intermediary doctrine and did not prohibit its use. *McCormick v. Nikkel & Assocs., Inc.*, 819 N.W.2d 368, 375 (Iowa 2012). Federal courts have also applied the learned intermediary doctrine to Iowa cases and predicted that Iowa will adopt the doctrine. *Petty v. United States*, 740 F.2d 1428, 1440 (8th Cir. 1984); *Daughetee v. Chr. Hansen, Inc.*, 960 F. Supp. 849, 870 (Iowa 2013) ("[T]he 'intermediary' defense is still viable under Iowa law.") (quoting *Nationwide Agribusiness Ins. Co. v. SMA Elevator Constr., Inc.*, 816 F. Supp. 2d 631, 653 (N.D. Iowa 2011)). Additionally, the vast majority of other jurisdictions apply the learned intermediary doctrine. *Centocor, Inc. v. Hamilton*, 372 S.W.3d 140, 158 n.17 (Tex. 2012) (stating the highest courts of at least thirty-five states have adopted a form of the learned intermediary doctrine and the intermediary courts and federal courts of additional states apply the doctrine as well). Because the Iowa Supreme Court has not rejected the learned intermediary doctrine and because other federal courts within the Eighth Circuit have applied the learned intermediary doctrine to Iowa cases, the Court finds it is likely Iowa law supports using the learned intermediary doctrine and will apply it here [to a failure to warn claim involving a medical device].

*Nicholson*, 2020 WL 3399899, at *15; *see also Madsen v. Am. Home Prods. Corp.*, 477 F. Supp. 2d 1025, 1033–34 (E.D. Mo. 2007) (citing *In re Norplant Contraceptive Prods. Liab. Litig.*, 215 F. Supp. 2d 795, 821 (E.D. Tex. 2002)) ("Iowa's adoption of the Restatement (Third) of Torts . . . and the overwhelming precedent adopting the learned intermediary doctrine convinces the Court that the Iowa Supreme Court would recognize that the [learned intermediary] doctrine governs Plaintiff's [prescription drug-related] failure-to-warn claims at issue.").

Neither of plaintiff's cited cases are products liability suits involving prescription drugs or medical devices. Neither of them discusses the learned intermediary doctrine. Federal courts presiding over products liability claims involving prescription drugs and medical devices routinely apply the learned intermediary doctrine under Iowa law.

Thus, the Court can do little more than to direct plaintiff back to the law the Court cited in its prior Order:

> Under the learned intermediary doctrine, a manufacturer of prescription drug or medical device need not provide warnings directly to patients using its products so long as adequate warnings were given to the health care provider supplying the products to patients. RESTATEMENT (THIRD) OF TORTS § 6 cmt. e; *see also Daughetee*, 960 F. Supp. 2d at 869–70. When a manufacturer supplied warnings to the health care provider, the plaintiff must show different or additional warnings were necessary and would have altered the health care provider's decision to supply the product at issue. *Willet v. Johnson & Johnson*, No. 1:12-CV-00034-JAJ-RAW, 2019 WL 7500524, at *2–3 (S.D. Iowa Sept. 30, 2019). Indeed, to establish proximate causation, "the plaintiff must show that a proper warning would have changed the decision of the treating physician, i.e., that but for the inadequate warning, the treating physician would not have used or prescribed the product." *Wessels v. Biomet Orthopedics, LLC*, No. 18-CV-97-KEM, 2020 WL 3421478, at *14 (N.D. Iowa June 22, 2020) (citations and quotation marks omitted).

(Doc. 81, at 9–10). This case involves a medical device and Dr. Bremner is a learned intermediary. Thus, the conduct relevant to plaintiff's failure to warn claim is Dr. Bremner's conduct, not her own conduct. As the Court previously found, the record contains insufficient evidence on Dr. Bremner's conduct and thus fails to establish proximate causation between the alleged inadequacy of the warnings and plaintiff's alleged harm. In short, plaintiff's authority is inapplicable, and the Court sees no error in its application of the learned intermediary doctrine or its conclusion.[3]

### b.  *Exception to the Learned Intermediary Doctrine*

Plaintiff argues that, even if the learned intermediary doctrine applies, an "exception" applies that prevents its use here. (Doc. 84-1, at 7–8). Plaintiff argues that,

---

[3] Plaintiff also embeds an argument here that she should be allowed to depose Dr. Bremner. (Doc. 84-1, at 6–7). This argument is copy and pasted from plaintiffs' motion to depose Dr. Bremner. (Doc. 83-1, at 4–5). The Court rejects this argument for the reasons discussed above.

if she is allowed to depose Dr. Bremner, Dr. Bremner will "likely . . . testify that he was not informed and did not independently know about several defective characteristics of the TVT device that Defendants knew about." (*Id.*, at 7). Plaintiff then cites *Ehlis v. Shire Richwood, Inc.*, 367 F.3d 1013 (8th Cir. 2004) for the apparent proposition that Dr. Bremner's lack of independent knowledge of these risks makes defendants liable despite the learned intermediary doctrine. (*Id.*, at 8).

As the Court discussed above, there is no just reason why plaintiffs should be allowed to depose Dr. Bremner far past the close of discovery, not to mention after the summary judgment stage. Even if they were able to depose Dr. Bremner, speculation about what his testimony might be is an inadequate reason to reinstate plaintiff's claim.

Even if Dr. Bremner offered the speculated testimony, plaintiff misconstrues the holding in *Ehlis* to constitute an exception in her favor. In *Ehlis*, the Eighth Circuit Court of Appeals stated:

> Under the learned intermediary doctrine, the manufacturer's failure to provide the physician with adequate warnings of the risks associated with a particular prescription product "is not the proximate cause of a patient's injury if the prescribing physician had independent knowledge of the risk that the adequate warning should have communicated." *Christopher v. Cutter Labs.*, 53 F.3d 1184, 1192 (11th Cir. 1995). "Thus, the causal link between a patient's injury and the alleged failure to warn is broken when the prescribing physician had 'substantially the same' knowledge as an adequate warning from the manufacturer should have communicated to him." *Id.*

367 F.3d at 1016. In other words, the *presence* of a physician's independent knowledge prevents the manufacturer from being held liable because the physician was already aware of the product's risks, regardless of the adequacy of the manufacturer's warnings. *See, e.g.*, *Christopher*, 53 F.3d at 1197–98 (discussing another case and stating "the drug manufacturer could not be penalized for the failure of the doctor to impart knowledge concerning the dangers of the drug of which the doctor had been warned and was aware").

Case 6:20-cv-02036-CJW-MAR   Document 92   Filed 10/16/20   Page 17 of 29

On the other hand, the *absence* of such knowledge is not an exception to the learned intermediary doctrine and does not preclude its application.[4][5]

### c.    Post-Sale Duty to Warn

Plaintiff also argues that her negligent failure to warn claim encompasses a post-sale duty to warn claim.  (Doc. 84-1, at 8–10).  Although plaintiff acknowledges that defendants notified medical facilities by letter after the Food and Drug Administration issued safety alerts for the TVT implant, plaintiff asserts defendants still "withheld certain information."  (*Id.*, at 9).  Plaintiff cites defendants' internal emails as evidence that defendants were aware of certain deficiencies in the TVT implant.  (*Id.*, at 10).  These facts, plaintiff argues, show defendants violated their post-sale duty to warn.

Under Iowa law, a seller of products "is subject to liability for harm to persons or property caused by the seller's failure to provide a warning after the time of sale or distribution of a product if a reasonable person in the seller's position would provide such a warning."  *Wurster*, 917 F.3d at 617 (quoting *Lovick*, 588 N.W.2d at 694); *see also* RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 10.  A reasonable seller would issue a warning if:

> (1) the seller knows or reasonably should know that the product poses a substantial risk of harm to persons or property; and

---

[4] Plaintiff also cites *Ehlis* for the proposition that North Dakota and Iowa apply the Restatement (Second) of Torts Section 2A.  (Doc. 84-1, at 8).  Section 2A does not exist.  It appears plaintiff means Section 402A, the only section discussed in *Ehlis* about products liability.  *See Ehlis*, 367 F.3d at 1017 (citing RESTATEMENT (SECOND) OF TORTS § 402A).  Iowa abandoned Section 402A approximately 18 years ago in favor of using the Third (Restatement) of Torts in products liability cases.  *Wright*, 652 N.W.2d at 162, 182; *see also Wurster*, 917 F.3d at 617.

[5] Plaintiff also notes that the Court found that her expert was qualified to testify about the adequacy of defendants' warnings.  (Doc. 84-1, at 7–8).  The Court's Order on the admissibility of the parties' expert testimony was entered before its Order on defendants' motion for partial summary judgment.  (Docs. 80 & 81).  Thus, although plaintiff's expert is qualified to opine on this topic, the adequacy of the warnings is no longer relevant in light of the Court's grant of summary judgment on this claim.

(2) those to whom a warning might be provided can be identified and can reasonably be assumed to be unaware of the risk of harm; and

(3) a warning can be effectively communicated to and acted on by those to whom a warning might be provided; and

(4) the risk of harm is sufficiently great to justify the burden of providing a warning.

*Wurster*, 917 F.3d at 617 (quoting *Lovick*, 588 N.W.2d at 694). Although a jury is usually best suited to determine whether a warning should have been issued, a court may find that no duty existed under certain circumstances. *Id.* "[E]vidence that a seller is on notice of a defect may be offered to prove that the seller breached its duty to warn." *Ahlberg v. Chrysler Corp.*, 481 F.3d 630, 633 (8th Cir. 2007).

As an initial matter, plaintiff never previously raised a post-sale duty to warn violation, at least explicitly. Neither her complaint nor her resistance to defendants' motion for partial summary judgment discuss such a duty or defendants' internal emails. (Docs. 1 & 45). Although her resistance alleged that defendants "withheld known risks," plaintiff only discussed this issue in the pre-sale context. *See, e.g.*, (Doc. 45, at 12). Thus, plaintiff's current post-sale failure to warn claim appears to be a belated reinterpretation of her original claim. This alone is a sufficient reason to deny her claim, *see Stults*, 2014 WL 775525, at *2–3, but the Court will proceed to the merits.

The Court is not aware of, and plaintiff does not cite, any case involving a post-sale failure to warn claim related to a prescription drug or medical device under Iowa law. Generally, though, products liability actions under Iowa law require some proof of causation. *See Lovick*, 588 N.W.2d at 700 ("The plaintiff in a products liability action must establish a causal relationship between the alleged negligence and injury. This requires a showing that the manufacturer's conduct was a substantial factor in the injury.") (citation omitted). Thus, like plaintiff's original failure to warn claim, she must show proximate causation as to her post-sale failure to warn claim under the learned

intermediary doctrine as well.  *See id.*  (noting the need to establish proximate cause in a failure to warn claim); *In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, No. 4:14-cv-113 (Morgan), 2016 WL 7209431, at *3 (M.D. Ga. Dec. 9, 2016) (holding that the learned intermediary doctrine applied under Florida law and that the relevant inquiry was whether post-sale warnings would have affected the implanting physician's conduct in a post-sale failure to warn claim involving a suburethral sling); *In re Cook Med., Inc. IVC Filters Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 1:14-ml-02570-RLY-TAB, 2018 WL 6415585, at *4 (S.D. Ind. Dec. 5, 2018) (holding the same under Georgia law in an action involving a blood clot filter).

Plaintiff's post-sale failure to warn claim, therefore, fails for the same reasons her original claim failed.  Plaintiff cannot show, in the absence of Dr. Bremner's testimony or some similar form of evidence, that any additional or different post-sale warnings beyond those already issued would have changed Dr. Bremner's conduct.  Even if the Court examined plaintiff's conduct instead, plaintiff has not offered any evidence that defendants could have identified her as a purchaser of the TVT implant and thus warned her directly.  *See Wurster*, 917 F.3d at 617.  Despite the evidence plaintiff offers concerning defendants' awareness of alleged defects in the TVT implant, she cannot establish proximate causation.  Although a jury is typically best suited to determine whether a warning should have been issued, the Court finds that the absence of proximate causation precludes this analysis and warrants granting summary judgment.

Thus, the Court finds that it properly granted summary judgment on plaintiff's failure to warn claim, even were the Court to allow plaintiff to expand her theory to include a post-sale failure to warn, (Doc. 81, at 9–12) and **denies** plaintiff's motion on this issue.

### 3.     *Negligent Misrepresentation*

Plaintiff argues her negligent misrepresentation claim should be reinstated because both she and Dr. Bremner reasonably relied on defendants' inadequate warnings. (Doc. 84-1, at 10–12).  As the Court stated in its prior Order, "[t]here is no evidence in the record that Dr. Bremner relied upon or even read defendants' warnings and instructions" related to the TVT implant.  (Doc. 81, at 13–14).  For the reasons discussed above, deposing Dr. Bremner now is not warranted.

Moreover, as the Court noted, plaintiff testified that she does not remember reading or relying upon any of defendants' materials in selecting the TVT implant.  (Doc. 81, at 3, 13); *see also* (Docs. 39, at 2; 45, at 3–4).  Plaintiff now argues this testimony is not dispositive of her knowledge because she may "subsequently recollect receiving [defendants' materials] when she testifies at trial[.]"  (Doc 84-1, at 12).[6]  First, plaintiff's argument relies on conjecture and speculation; plaintiff does not assert even now that she remembers the material, only that by the time of trial she might.   Conjecture and speculation about evidence is insufficient to establish a genuine issue of material fact. *Beaulieu v. Ludeman*, 690 F.3d 1017, 1024 (8th Cir. 2012).  Second, plaintiff's argument is patently unbelievable.  She received the TVT implant more than 16 years ago.  To suggest that plaintiff would, at trial, suddenly remember receiving, reading, and relying upon these materials is beyond reason.  Even if plaintiff ultimately testified to this effect, no reasonable jury could rely on such testimony.

Thus, the Court finds it properly granted summary judgment on plaintiff's negligent misrepresentation claim due to the absence of evidence on reliance (Doc. 81, at 12–14) and **denies** plaintiff's motion on this issue.

---

[6] This quote is from the fraud section of plaintiffs' brief, but the same argument is made in both sections.  (Doc. 84-1, at 11–12) ("[G]enuine issues of material fact remain as to whether or not [plaintiff], in fact, received and read Defendants' handouts regarding the TVT device.").

#### 4. *Fraud-Based Claims*

Plaintiff also argues that the Court should reinstate her fraud-based claims for largely the same reasons her negligent misrepresentation claim, i.e. that defendants made false and misleading statements inducing reliance, and that plaintiff may recollect reading defendants' materials, thus causing her reliance. (Doc. 84-1, at 12–13). Again, the lack of evidence of reliance warranted the Court's grant of summary judgment on these claims. (Doc. 81, at 16). Plaintiff's reliance on Dr. Bremner and the alleged inadequacy of defendants' warnings alone are insufficient in the absence of evidence that Dr. Bremner read and relied upon the warnings. No such evidence is in the record. Thus, the Court **denies** plaintiff's motion on this issue.

#### 5. *Loss of Consortium*

Last, plaintiffs appear to argue that Timothy's loss of consortium claim survived summary judgment. (Doc. 84-1, at 13–14). They also specify that the claim is Timothy's and not plaintiff's claim. (Doc. 90, at 5). Defendants never requested summary judgment on this claim. (Doc. 38, at 1). In its Order on defendants' motion for partial summary judgment, the Court explicitly stated that Timothy's only claim was for loss of consortium, that it was not at issue, and that it remained viable. (Doc. 81, at 4 n.1, 23 n.7). Thus, there is nothing about the Order to reconsider or amend and the Court **denies as moot** plaintiffs' motion on this issue.

For these reasons, plaintiffs' motion to reconsider the Court's Order granting in part defendants' partial motion for summary judgment is **denied**. (Doc. 84). The Court's partial grant of summary judgment remains unchanged. (Doc. 81).

# V. DEFENDANTS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT ON THE STATUTE OF LIMITATIONS

## A. Applicable Law

Federal Rule of Civil Procedure 16(b) states that the court must issue a scheduling order which sets deadlines for, among other things, filing motions. FED. R. CIV. P. 16(b)(3). Rule 16(b)(4) states that "[a] schedule may be modified only for good cause and with the judge's consent." Generally, courts must consider whether good cause warrants the filing of an untimely motion for summary judgment. *See, e.g.*, *Eischeid v. Dover Constr., Inc.*, 217 F.R.D. 448, 455–56 (N.D. Iowa 2003). "The primary measure of good cause is the movant's diligence in attempting to meet the [scheduling] order's requirements." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716–17 (8th Cir. 2008) (citation and internal quotation marks omitted).

It is within the court's discretion to consider a successive motion for summary judgment. *Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir. 1995). Good cause for such a motion can be present when, for example, there is an intervening change in the law, new evidence is discovered, or there is a clear error in the court's prior order. *Id.* "Avoiding an unnecessary trial also may constitute good cause for considering a successive motion for summary judgment." *Lach v. United States*, No. 2:08 cv 251, 2012 WL 1189619, at *2 (N.D. Ind. Apr. 6, 2012); *see also Kim v. Conagra Foods, Inc.*, No. 01 C 2467, 2003 WL 22669035, at *2 (N.D. Ill. Nov. 10, 2003).

Although the good cause standard governs, a district court also "possesses inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Dietz v. Bouldin*, 136 S. Ct. 1885, 1891 (2016) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962)).

### B.    Analysis

On February 4, 2019, the MDL court set August 14, 2019, as the deadline for filing dispositive motions. (Doc. 15, at 3). Accordingly, defendants filed their motion for partial summary judgment on August 9, 2019. (Doc. 38). Defendants only raised a statute-of-limitations argument as to plaintiff's warranty-based claims. (Doc. 39, at 11). Defendants did not assert that any other statute-of-limitations issues applied which barred plaintiffs' other claims.

In ruling on defendants' motion for partial summary judgment, the Court found the applicable statute-of-limitations barred plaintiff's claim for breach of implied warranty. (Doc. 81, at 17–21). Although the Court concluded the discovery rule did not apply to that claim, it stated in the alternative that, even if it did, "plaintiff knew or should have known about her alleged injuries long before the filing of this case in February 2014. Plaintiff experienced most of, if not all, the injuries and ailments she now complains of within several months of receiving her TVT implant." (*Id.*, at 20). In support, the Court cited plaintiff's expert's summary of plaintiff's medical visits in the months and years following her receipt of the TVT implant, during which plaintiff regularly reported pelvic, vaginal, and urological health issues. (Doc. 40-1, at 8–11).

In light of this alternative finding that plaintiff should have known about her injuries within months of receiving her implant, defendants now argue plaintiff's remaining claims—design defect, negligent infliction of emotional distress, and unjust enrichment[7]—are barred under the applicable two-year statute-of-limitations under Iowa Code Section 614.1(2). (Doc. 82, at 2); *see also* (Doc. 81, at 23). Again, plaintiff received the TVT implant on March 7, 2004. (Doc. 39, at 2). Under the discovery rule,

---

[7] Neither party discusses the effect of this statute-of-limitations argument on Timothy's claim for loss of consortium and plaintiffs' claim for punitive damages, both of which remain viable. *See* (Doc. 81, at 23 n.7).

which appears to apply to plaintiff's remaining claims, if plaintiff discovered or reasonably should have discovered her alleged injuries within months of the implantation surgery, her claims would have begun to accrue sometime in 2004. *See Estate of Montag v. T H Agric. & Nutrition Co.*, 509 N.W.2d 469, 470 (Iowa 1993) ("[T]he statute of limitations [on personal injury claims] begins to run when a plaintiff first becomes aware of facts that would prompt a reasonably prudent person to begin seeking information as to the problem and its cause."). Thus, if that is the case the two-year statute-of-limitations that applies to these claims would have expired around the end of 2006. *See* (Doc. 82, at 2). Plaintiff did not file suit, however, until February 28, 2014. (Doc. 1). As a result, defendants request that the Court allow this issue to be fully briefed before this case proceeds. (Doc. 82, at 5). Defendants argue that resolution of this narrow and dispositive issue is in the interest of judicial efficiency and will not prejudice plaintiffs. (*Id.*, at 5–9).

Plaintiffs argue that defendants have not shown good cause for their untimely assertion of this issue and that they would be prejudiced if required to litigate the statute-of-limitations issue at this stage. (Doc. 85, at 3–4, 10–11).[8]

Generally, successive motions for summary judgment have been permitted where they "may obviate the need for a trial and, therefore, conserve judicial resources." *Cleveland Air Serv., Inc. v. Pratt & Whitney Can.*, No. 4:13-CV-161-DMB-DAS, 2016 WL 7634674, at *4 (N.D. Miss. July 29, 2016); *see also Henderson v. Wal-Mart Stores,*

---

[8] Plaintiff also argues that defendants waived any defense on the statute-of-limitations by not asserting it in a responsive pleading as required by Federal Rule of Civil Procedure 8(c). (Doc. 85, at 7–8). In their Master Answer for the MDL, however, defendants asserted a statute-of-limitations defense generally. (Doc. 49-2, at 43). Even a brief, non-specific mention of a statute-of-limitations argument satisfies the affirmative defense pleading requirement of Rule 8(c). *See, e.g., Holway v. Negro Leagues Baseball Museum*, 263 Fed. App'x 538, 538 (8th Cir. 2008) (per curiam) (citing *Buttice v. G.D. Searle & Co.*, 938 F. Supp. 561, 565 (E.D. Mo. 1996)). Thus, plaintiff's argument is without merit on this issue.

*Inc.*, No. 1:14-cv-224, 2015 WL 3901755, at *3 (E.D. Tex. June 23, 2015) ("It would be a considerable waste of the court's and the parties' resources to have a trial on an issue that could be resolved through motion practice."). Specifically, some courts have allowed successive summary judgment motions on statute-of-limitations-based arguments. *See, e.g.*, *Cleveland Air Serv., Inc.*, 2016 WL 7634674, at *4 ("[T]he statute of limitations argument has the potential to conserve judicial resources and . . . therefore consideration of the argument is proper."); *Perez v. Superior Ct. of Guam*, Cv No 08-00007 DAE, 2011 WL 13209114, at *4 (D. Guam July 19, 2011) (noting that the defendant's statute-of-limitations argument was not raised "at the eleventh hour," trial had not yet been scheduled, and the argument had the potential to "save all concerned" the greater expense of a trial). Other courts have rejected such motions. *See, e.g.*, *Daker v. Ferrero*, 1:03-CV-2526-RWS, 2007 WL 1020844, at *4 (N.D. Ga. Mar. 30, 2007) (denying the defendants' statute-of-limitations argument because the defendants had an "ample opportunity" to discover the relevant facts and assert the argument in a timely fashion).

Even in cases arising from the same MDL, courts have reached different conclusions on whether to grant leave to file a successive motion for summary judgment on a statute-of-limitations argument. In *Massoudi v. Ethicon, Inc.*, the Central District of California found that the plaintiffs had not identified any prejudice and the defendants had not shown good cause for their delay aside from dealing with a large volume of cases. (No. 2:20-cv-03944 (C.D. Cal. Aug. 11, 2020) (Doc. 90, at 1–2)). Nevertheless, the court found that "a just and speedy resolution of th[e] lawsuit" warranted the filing of the defendants' successive motion for summary judgment on the statute-of-limitations. *Id.* A contrary result, the court found, would "risk undergoing the full labor and expense of trial preparation for a trial that may nevertheless be resolved on an entirely legal basis."

*Id.*[9]  Similarly, the District of Arizona found that, "[a]lthough Defendants have offered no real justification for their delay . . ., the Court agrees it would be prudent to address their affirmative defense [on the statute-of-limitations] now, before trial." (*Granillo v. Johnson & Johnson*, No. 4:19-cv-529 (D. Ariz. Mar. 3, 2020) (Doc. 62, at 1)).[10]  The District of Kansas, however, refused to consider a successive motion for summary judgment on the statute-of-limitations.  (*Rutherford v. Ethicon, Inc.*, No. 20-cv-1066-EFM-TJJ (D. Kan. Apr. 29, 2020) (Doc. 63, at 2–3)).

The only good cause present here is judicial efficiency.  Defendants cite no other reason why their statute-of-limitations argument could not have been included in their initial motion for summary judgment.  Although many courts have found judicial efficiency alone to be sufficient under these circumstances, the Court is highly dubious of allowing a dispositive motion to be filed more than a year after the deadline.  *See Sherman*, 532 F.3d at 716–17 (noting the importance of diligence in assessing good cause).

---

[9] The Court later granted the defendants' supplemental motion for summary judgment on the statute-of-limitations and dismissed the action in its entirety.  (*Massoudi*, No. 2:20-cv-03944 (C.D. Cal. Sept. 24, 2020) (Doc. 101))

[10] Although *Minzel v. Ethicon, Inc.*, 8:20CV13 (D. Neb. June 12, 2020 (Docs. 92, 93 & 113) and *Norby v. Ethicon, Inc.*, No. 1:20-cv-00323 (N.D. Ga. Apr. 17, 2020) (Doc. 45 at 5–6) also both involve successive motions for summary judgment on the statute-of-limitations filed in cases arising from the same MDL, their successive motions proceeded in part because their prior motions for summary judgment were denied as moot and dismissed without prejudice respectively.  Thus, these cases offer minimal guidance here.

Also, in *Gillespie v. Ethicon, Inc.*, No. 3:20-cv-00025-JAJ-HCA (Sept. 9, 2020) (Doc. 63) and *Willet v. Johnson & Johnson*, No. 1:12-cv-00034-JAJ-RAW, 2020 WL 1877188 (S.D. Iowa June 3, 2020), the Southern District of Iowa granted leave to file successive motions for summary judgment.  Neither case, however, involved the statute-of-limitations or provided any rationale for the court's grant of leave.  Thus, these cases also offer minimal guidance.

Nevertheless, the Court finds it is ultimately in the interest of all involved to address the statute-of-limitations issue on a successive motion for summary judgment rather than ignoring it until trial. Regardless of when, plaintiff will have to address this issue. Thus, defendants' motion does not backtrack the litigation here but, rather, fast-forwards it. There is little point in requiring the parties to expend time and money in preparation for trial only for this dispute to be resolved on a legal issue that could be addressed now, even if defendants could and should have raised it earlier. Although the Court declines to expound upon the merits at this time so that the parties may fully brief this issue,[11] its prior Order indicates that defendants' statute-of-limitations defense appears to have significant merit. Given that addressing the issue now is substantially more efficient, the Court finds good cause is present.

Further, the Court elects to exercise its discretion in light of this good cause. Trial has not yet been scheduled in this matter. The statute-of-limitations issue is narrow and potentially dispositive of all of plaintiffs' claims. Given that this defense was raised in defendants' Master Answer, it is also not an entirely unanticipated avenue of litigation. Based on the totality of circumstances, the Court finds it appropriate to address this issue now and thus **grants** defendants' motion for leave to file a supplemental motion for summary judgment on the statute-of-limitations issue. (Doc. 82).[12]

---

[11] The Court notes that defendants submitted their substantive brief along with their motion for leave (Doc. 82-3) and that plaintiff responded to the substance of defendants' brief at length (Doc. 85, at 4–10). The Court will, however, afford both parties an opportunity to address this issue more fully if they so desire. In their briefing, both parties are to also brief the implication any statute-of-limitations ruling would have on Timothy's claim for loss of consortium and plaintiffs' claim for punitive damages.

[12] Given the Court's grant of leave, it need not consider defendants' alternative request for a bifurcated trial on the statute-of-limitations issue. *See* (Doc. 86, at 5 n.5).

## VI.    CONCLUSION

For these reasons, plaintiffs' Motion for Leave to Take the Deposition of Randall Bremner, M.D. (Doc. 83) is **denied**, plaintiffs' Motion to Reconsider and Amend this Court's Memorandum Opinion and Order on Defendants' Motion for Summary Judgment (Doc. 84) is **denied**, and defendants' Motion for Leave to File Supplemental Motion for Summary Judgment on the Statute of Limitations (Doc. 82) is **granted**.

Defendants have 14 days from the publication date of this Order to file their supplemental motion for summary judgment and corresponding brief.  Plaintiffs have 14 days from the date defendants file their brief to submit a resistance brief.  Defendants have seven days from the date plaintiffs file their resistance to submit a reply brief.

**IT IS SO ORDERED** this 16th day of October, 2020.

_____
C.J. Williams
United States District Judge
Northern District of Iowa