# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

| | |
|---|---|
| SUSAN KELLY; and TIMOTHY KELLY, | No. 20-CV-2036-CJW-MAR |
| Plaintiffs, | |
| vs. | |
| ETHICON, INC.; and JOHNSON & JOHNSON, | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

---

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................. 3

II.  RELEVANT BACKGROUND ............................................................. 3

III. APPLICABLE LAW ............................................................................ 5

IV.  ANALYSIS ........................................................................................... 7

    A.   Appearance of Bias ................................................................... 7

        1.   Timing and Scheduling ................................................... 8

        2.   Predetermining Dismissal on the Statute-of-Limitations ............ 12

        3.   Defendants' Supplemental Motion for Summary Judgment ........ 15

        4.   Assessment of the Evidence .............................................. 17

Case 6:20-cv-02036-CJW-MAR   Document 116   Filed 02/18/21   Page 1 of 27

       5.    Advocating for Defendants ................................................19

       6.    Conclusion ....................................................................24

    B.    Actual Bias ...........................................................................26

V.    CONCLUSION ...............................................................................27

# I.    INTRODUCTION

This matter is before the Court on plaintiffs' Motion to Disqualify and Transfer this Matter filed on January 8, 2021.  (Doc. 109).  In their motion, plaintiffs assert that the appearance or presence of bias by the Court requires recusal.  (Docs. 109 & 109-1).  On January 22, 2021, defendants timely filed a resistance.  (Doc. 111).  On January 26, 2021, plaintiffs timely filed a reply.  (Doc. 112).[1]  For the following reasons, the Court **denies** plaintiffs' motion.

# II.    RELEVANT BACKGROUND

On February 28, 2014, plaintiffs Susan Kelly ("Ms. Kelly") and Timothy Kelly ("Mr. Kelly") filed their Short Form Complaint in a multi-district litigation ("MDL") case in the Southern District of West Virginia relating to defendants' pelvic mesh products.  (Doc. 1).  On August 1, 2019, discovery closed in this case.  (Doc. 15, at 3).  On August 9, 2019, defendants filed a motion for partial summary judgment.  (Doc. 38).  On August 14, 2019, defendants filed a motion to exclude some of plaintiffs' expert's testimony.  (Doc. 40).  On August 15, 2019, plaintiffs filed a motion to exclude some of defendants' expert's testimony.  (Doc. 42).  All three motions were resisted.  (Docs. 44, 45, 46, & 47).

---

[1] In their resistance, defendants request oral argument due to the "[g]ravity of the relief sought," alleged deficiencies in plaintiffs' motion, and the seriousness of plaintiffs' allegations.  (Doc. 111, at 2).  In their reply, plaintiffs assert that oral argument is unnecessary.  (Doc. 112, at 5). Local Rule 7(c) states that a party requesting oral argument must show good cause.  Given the Court's familiarity with this case, the availability of all briefing and orders filed, and the full briefing already submitted on this particular motion, the Court finds that defendants have not shown good cause and that oral argument is unnecessary.

Defendants also argue that plaintiffs' motion requests transfer but provides no argument on this topic.  (Doc. 111, at 15).  The Court understands plaintiffs' motion to request the Court's recusal and transfer of this case to another judge.  The lack of discussion on actual transfer is immaterial given that the relief requested is clear.

3

On May 14, 2020, the Southern District of West Virginia transferred this case to the Northern District of Iowa with the three motions discussed still pending. (Doc. 48). On June 2, 2020, this case was assigned to this Court. On June 10, 2020, plaintiffs filed a motion to strike some of defendants' experts pursuant to a discovery order issued by the transferring court (Docs. 74 & 79), which defendants resisted (Doc. 76).

On August 7, 2020, the Court issued an order granting in part and denying in part both plaintiffs' and defendants' motions to exclude expert testimony. (Doc. 80). That same day, the Court also issued an order granting in part and denying in part defendants' motion for partial summary judgment. (Doc. 81). On September 16, 2020, defendants filed a motion for leave to file a supplemental motion for summary judgment on the statute-of-limitations (Doc. 82) and plaintiffs filed a motion for leave to take an untimely deposition (Doc. 83) as well as a motion to reconsider the Court's order on partial summary judgment (Doc. 84). On October 7, 2020, the Court granted plaintiffs' motion to strike some of defendants' experts. (Doc. 91). On October 16, 2020, the Court denied plaintiffs' motion to take an untimely deposition and motion to reconsider partial summary judgment and granted defendants' motion for leave to file a supplemental motion for summary judgment on the statute-of-limitations. (Doc. 92).

On October 27, 2020, defendants filed their supplemental motion for summary judgment on the statute-of-limitations. (Doc. 93). On November 9, 2020, plaintiffs filed a motion to strike defendants' motion. (Doc. 94). Both motions were resisted. (Docs. 95, 98, 99, 100, 101, 102, 103, 104, 105, & 106). On January 6, 2021, the Court denied plaintiffs' motion to strike and granted defendants' supplemental motion for summary judgment, finding that the statute-of-limitations barred plaintiffs' remaining claims. (Doc. 107). On January 8, 2021, plaintiffs filed their motion for recusal now before the Court. (Doc. 109).

### III. APPLICABLE LAW

Litigants "have a constitutional right to have a neutral and detached judge preside over their matters." *Rubashkin v. United States*, No. 13-CV-1028-LRR, No. 08-CR-1324-LRR, 2016 WL 237119, at *13 (N.D. Iowa Jan. 20, 2016) (citation and internal quotation marks omitted). To protect this right, Congress enacted recusal provisions under Title 28, United States Code, Section 455 to promote both the appearance and reality of impartiality in the courts. *Id.*, at *14. In ruling on motions under Section 455, courts must uphold the interests of impartiality and public confidence in the judiciary while also declining recusal when unwarranted. *Id.* (compiling cases holding that a judge has an equal duty not to recuse in a variety of situations).

Under Section 455(a), a judge must recuse from "any proceeding in which [the judge's] impartiality might reasonably be questioned." "[A]ctual bias is irrelevant" under Section 455(a). *White v. Nat'l Football League*, 585 F.3d 1129, 1138 (8th Cir. 2009) (citation omitted). Instead, the objective standard asks "whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case." *Scenic Holding, LLC v. New Bd. of Trs. of the Tabernacle Missionary Baptist Church, Inc.*, 506 F.3d 656, 662 (8th Cir. 2007) (citation omitted). "Judicial rulings or opinions that are formed on the basis of facts introduced in the course of a judicial proceeding will almost never provide a basis for recusal." *Rubashkin*, 2016 WL 237119, at *16 (citation and internal quotation marks omitted). Indeed, judicial rulings "[a]lmost invariably" are merely "grounds for appeal, not for recusal." *Liteky v. United States*, 510 U.S. 540, 555 (1994). When a judge's findings are based on "facts introduced or events occurring in the course of the current proceeding[ ]," recusal is only appropriate under Section 455(a) if such findings "display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* In other words, the judge's disposition must be "so extreme as to display clear inability to render fair judgment."

*Id.*, at 551. "The critical inquiry is whether there is a reasonable question as to whether a judge has a predisposition towards a party that is wrongful or inappropriate because it is undeserved, is excessive in degree or rests upon knowledge that the judge ought not to possess." *Rubashkin*, 2016 WL 237119, at *16.

Although Section 455(a) is broad, it "does not extend literally to any kind of doubtful behavior." *United States v. Sypolt*, 346 F.3d 838, 839 (8th Cir. 2008). Mere "expressions of impatience, dissatisfaction, annoyance, and even anger" are not sufficient to trigger Section 455(a). *Liteky*, 510 U.S. at 555–56. Indeed, "unreasonable and conclusory allegations fail to provide a basis for recusal under [Section] 455(a)." *Rubashkin*, 2016 WL 237119, at *16. The following grounds ordinarily do not warrant recusal:

> (1) Rumor, speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters; (2) the mere fact that a judge has previously expressed an opinion on a point of law or has expressed a dedication to upholding the law . . . ; (3) prior rulings in the proceeding, or another proceeding, solely because they were adverse; (4) mere familiarity with the defendant(s), or the type of charge, or kind of defense presented; (5) baseless personal attacks on or suits against the judge by a party; (6) reporters' personal opinions or characterizations appearing in the media, media notoriety, and reports in the media purporting to be factual, such as quotes attributed to the judge or others, but which are in fact false or materially inaccurate or misleading; and (7) threats or other attempts to intimidate the judge.

*Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995) (citation omitted).

Under Section 455(b)(1), a judge must recuse "[w]here [the judge] has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." "[J]udicial remarks during the course of a [case] that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky*, 510 U.S. at 555. Such comments may warrant recusal, however, "if they reveal an opinion derives from an

6

extrajudicial source." *Id.* Such comments will only warrant recusal if "they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.*

## IV.    ANALYSIS

In their motion, plaintiffs assert that this Court is not impartial and that they have a "subjective fear" of bias. (Doc. 109-1, at 7). Plaintiffs assert that recusal is required both due to the appearance of bias under Section 455(a) and because the Court harbors actual bias under Section 455(b)(1). (*Id.*, at 7–14). The Court will address each ground in turn.[2]

### A.    Appearance of Bias

Plaintiffs assert several arguments in support of their contention that the appearance of bias exists here. First, plaintiffs assert that the Court's failure to schedule trial or trial-related deadlines and the timing of the Court's grant of leave to defendants to file a supplemental motion for summary judgment indicates bias. (Doc. 109-1, at 9–10, 12–14). Second, plaintiffs argue the Court predetermined that this case would be dismissed on statute-of-limitations grounds before hearing all of plaintiffs' evidence when it stated in its original order on defendants' motion for partial summary judgment that "[Ms. Kelly] knew or should have known about her alleged injuries long before the filing

---

[2] Defendants argue plaintiffs' motion is untimely. (Doc. 111, at 2–7). The Court acknowledges the general timeliness requirement, *In re Kansas Pub. Emps. Ret. Sys.*, 85 F.3d 1353, 1360 (8th Cir. 1996), and authority holding that "[a] motion to recuse should not be withheld as a fallback position to be asserted only after an adverse ruling," *White*, 585 F.3d at 1141. Given the absence of a firm timeliness deadline and the sprawling and serious nature of plaintiffs' allegations, however, the Court declines to consider this issue and will instead proceed to the merits.

Further, although defendants address plaintiffs' broader arguments (e.g., their argument on scheduling) as well as plaintiffs' primary allegations of bias in the record (e.g., their argument on predetermination), defendants do not specifically address some of plaintiffs' more granular citations to the record. (Doc. 111). Here, the Court endeavors to address each statement cited by plaintiffs. The Court does so not to offer any arguments on defendants' behalf, but to fully address and consider plaintiffs' allegations in sufficient detail.

of this case in February 2014." (*Id.*, at 8–9); *see also* (Doc. 81, at 20). Third, plaintiffs argue that the Court signaled that it would grant summary judgment on the statute-of-limitations when it directed the parties to also discuss Mr. Kelly's loss of consortium claim and plaintiffs' punitive damages claim in their supplemental briefing. (Doc. 109-1, at 9). Fourth, plaintiffs allege the Court improperly weighed the evidence against them and in contradiction of the record. (*Id.*, at 8–9, 10). Fifth, plaintiffs argue that the Court made arguments on defendants' behalf throughout this case. (*Id.*, at 10–12). The Court will address each ground in turn.

As an initial matter, the Court notes that "[a] judge's lack of knowledge of a disqualifying circumstance may bear on the question of remedy[.]" *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 859 (1988). Thus, at the outset, the Court notes that it does not personally know any of the parties or their attorneys, it does not have any known affiliations or interests related to any person or entities in this case, and it does not have any personal knowledge of the facts of this case. There is no allegation that the Court suffers from any such disqualifying circumstances and it is not apparent how a reasonable person could incorrectly infer such a circumstance. Further, there is nothing in this judge's background, prior employment history, published writings, or affiliations that would allow a third party to have reason to believe that the Court is biased for or against either of the parties in this case. Because the lack of these circumstances does not preclude the potential appearance of impropriety, however, the Court's analysis does not end here. *See id.*

### 1. Timing and Scheduling

Plaintiffs argue that the timing of the Court's actions reasonably give the appearance of partiality in two broad respects. First, plaintiffs compare this case to *Nicholson v. Biomet, Inc.*, 3:18-cv-03057-CJW-MAR, another case from an unrelated MDL before this Court, in asserting that the Court failed to properly set motion, trial,

and other deadlines here. (Doc. 109-1, at 12–14). Second, plaintiffs assert that the Court's grant of defendants' supplemental motion for summary judgment without setting trial-related deadlines was improper. (*Id.*, at 3, 9–10).[3] Plaintiffs assert that it appears the Court did not set such deadlines because it anticipated at the outset that this case would be disposed of at summary judgment. (*Id.*, at 3, 9–10, 12–14); *see also* (Doc. 112, at 2). Thus, plaintiffs conclude that the Court's impartiality is reasonably questioned.

When this case was transferred from the Southern District of West Virginia and the Court was assigned to it in June 2020, there were three motions pending before the Court which were approximately ten months old. (Doc. 38) (defendants' motion for partial summary judgment filed on August 9, 2019); (Doc. 40) (defendants' motion to exclude filed on August 14, 2019); (Doc. 42) (plaintiffs' motion to exclude filed on August 15, 2019). Before the Court took any substantive action in this case, plaintiffs filed their motion to strike some of defendants' experts on June 10, 2020, pursuant to an order issued by the transferring court. (Doc. 74). Given the volume of the record, the nature of the outstanding motions, and the length of time the motions had been pending, the Court elected to rule on all pending motions without waiting for the assigned magistrate judge to consult with the parties about scheduling deadlines for further motions, conferences, and trial.[4] The Court naturally recognized that its rulings on the

---

[3] Plaintiffs also argue that the Court never ruled on the parties' "general *Daubert* motions." (Docs. 109-1, at 3; 112, at 2). The Court ruled on the parties' motions to exclude expert testimony. (Doc. 80). No other *Daubert*-related motions were or are pending before the Court.

[4] In this district, the United States Magistrate Judges are responsible for holding scheduling conferences with the parties and setting deadlines; not the assigned United States District Court Judge. That the magistrate judge here did not set in motion a scheduling conference was that judicial officer's decision. The undersigned United States District Court Judge had nothing to do with that part of the case control, making plaintiffs' assumption that the failure to set a schedule in this case reflects on this judge's intent or bias.

9

pending motions could impact the length of trial and other matters that could affect scheduling issues.  Courts have broad discretion in managing their dockets.  *See, e.g.*, *Jones v. Clinton*, 72 F.3d 1354, 1361 (8th Cir. 1996).  Although an objective observer would not have been privy to the Court's precise reasoning, that same observer could not reasonably jump to the conclusion that the Court anticipated disposing of this case at the outset based only on how it chose to manage its docket in this unusual procedural circumstance.  This is particularly true considering that neither of the parties ever requested that trial or other deadlines be set.

The Court had ruled on the parties' first three motions but had not yet reached plaintiffs' motion to strike when the parties filed three more motions which challenged many of the Court's prior findings and requested new discovery.  (Doc. 82) (defendants' motion for leave to file a motion for supplemental summary judgment); (Doc. 83) (plaintiffs' motion to take a deposition); (Doc. 84) (plaintiffs' motion to reconsider partial summary judgment).  The Court's grant of defendants' motion for leave to file a supplemental motion for summary judgment then brought this case back to the summary judgment stage on a narrow and potentially dispositive issue.  Thus, the Court again elected to rule on the motion without waiting for the magistrate judge to schedule further deadlines.  Further, neither party requested the Court issue a scheduling order.  Again, a reasonable person could not jump to the conclusion that the Court's decision to continue to rule on pending motions without waiting for the magistrate judge to schedule further deadlines (particularly in the absence of a request to do so) reflected a bias against one particular party.

It is immaterial that the transferring court urged this Court to immediately set this case for trial.  *See* (Doc. 48, at 1) ("***Upon transfer, I urge the receiving court to immediately set these cases for trial without reopening discovery.  Further discovery will only result in unjust delay.  Extensive development of these cases over a period of***

*years has made such further action completely unnecessary.* ").  First, this was merely a suggestion by the transferring court and has no binding effect on this Court.  Second, the transferring court's direction was made for the purpose of informing transferor courts that further discovery was unnecessary.  (*Id.*).  Thus, this Court's decision to rule on pending discovery and summary judgment motions without waiting for the magistrate judge to set a schedule for other deadlines did not contradict the reasoning behind the transferring court's recommendation.

It is also immaterial how the Court managed its docket in *Nicholson*, but some critical distinctions should be noted.[5]  *Nicholson* was initially transferred to the Honorable Leonard T. Strand, Chief Judge, on September 7, 2018, before being transferred to the Court on October 4, 2018.  In November 2018, the assigned magistrate judge held a scheduling conference with the parties and entered a scheduling order.  (Docs. 235, 239).  There were, then, no pending motions for the Court to rule on.  Summary judgment was not pending when the transfer occurred; it was not even briefed until more than a year later in November and December 2019.  (Docs. 283, 287, 290, & 301).  The same is true of the defendants' motion to exclude expert testimony in that case.  (Docs. 282, 289, & 299).  At transfer, it appears the only matter pending was a motion to strike certain affirmative defenses (Docs. 13 & 14) which had been stayed in the transferring court (Doc. 17) and was not fully briefed until after transfer (Docs. 243 & 244).  In sum, this Court in *Nicholson* did not have several fully briefed motions pending before it at the time of transfer and the summary judgment stage was still forthcoming.  Thus, the Court handled that case differently.  A reasonable observer could not conclude that the Court's different docket management here indicates bias in light of these significant differences.  The Court also notes that *Nicholson* proceeded all the way to trial (Doc. 419), which a

---

[5] The docket citations in this paragraph refer to *Nicholson v. Biomet, Inc.*, 3:18-cv-03057-CJW-KEM.

reasonable person would view as weighing against an assertion that the Court disfavors plaintiffs generally, disfavors medical device cases, disfavors permitting cases to go to trial, or has some other improper bias.

In sum, plaintiffs' timing-related arguments amount to rank speculation that because the magistrate judge did not immediately and without prompting from the parties set trial deadlines that the district court judge must have anticipated this case would be disposed of on summary judgment. In light of the facts outlined above, even someone not privy to the Court's actual reasoning could not reasonably infer that the Court held a deep-seated favoritism for defendants or antagonism towards plaintiffs merely because of its docket management decisions. A reasonable observer would also note that defendants' pending motion for summary judgment at that time was only partial (Doc. 38) and, even then, the Court did not grant summary judgment on all the claims requested (Doc. 81). These facts belie any reasonable inference that the Court anticipated or desired at the outset that this case be disposed of on summary judgment.

### 2. *Predetermining Dismissal on the Statute-of-Limitations*

Next, plaintiffs argue that it appears this Court predetermined that this case would be dismissed on statute-of-limitations grounds and intended to tip defendants off to this argument when ruling on defendants' original motion for partial summary judgment. (Docs. 109, at 8–9; 112, at 2). The Court addressed this argument by plaintiffs previously in its order on defendants' supplemental motion for summary judgment (Doc. 107, at 13–14 n.7) but will elaborate on its reasoning here.

In their original motion for partial summary judgment, defendants argued the applicable statute-of-limitations barred plaintiffs' breach of warranty claim. (Doc. 39, at 11). Defendants noted in a footnote that the discovery rule did not apply. (*Id.*, at 11 n.5). In their resistance, plaintiffs argued the discovery rule did apply to their breach of warranty claim and thus spared it from the statute-of-limitations. (Doc. 45, at 15–17)

12

("[T]he discovery rule applies [to plaintiffs' common law breach of warranty claim]. Defendants have not and cannot offer any facts that indicated Plaintiffs discovered their warranty-based causes of action outside the five-year statute of limitations."). In ruling on defendants' motion, the Court thoroughly discussed the discovery rule and found it did not apply. (Doc. 81, at 17–20). In the alternative, and to specifically address plaintiffs' argument, the Court found that "[Ms. Kelly] knew or should have known about her alleged injuries long before the filing of this case in February 2014. [Ms. Kelly] experienced most of, if not all, the injuries and ailments she now complains of within several months of receiving her TVT implant." (*Id.*, at 20). In support of its finding, the Court cited plaintiffs' expert's summary of Ms. Kelly's medical issues in the months and years following her surgery. (*Id.*) (citing (Doc. 40-1, at 8–11)). The Court made no other findings about the discovery rule beyond addressing plaintiffs' argument. It did not direct the parties to file any additional motions on the statute-of-limitations or hypothesize that this issue might preclude plaintiffs' other claims. Defendants subsequently moved for summary judgment based on the statute-of-limitations (Docs. 82 & 93) and the Court ultimately granted summary judgment on this basis (Docs. 92 & 107).

Although plaintiffs acknowledge that the Court was responding to their argument, they assert that the Court's alternative finding was still a predetermination because it was unnecessary and premature. (Doc. 112, at 3). No reasonable person could conclude the Court predetermined the statute-of-limitations issue merely because it elected to fully respond to plaintiffs' argument instead of dismissing it as inapplicable. This cannot reasonably indicate bias; if anything, it indicates thoroughness and consideration. It is simply unreasonable that a court could be deemed biased against a party for responding to arguments raised by that same party. Further, at the time of that order, discovery was complete. *See* (Doc. 48, at 1) ("***Extensive development of these cases over a period of***

13

*years has made such further [discovery] completely unnecessary.*"). Thus, its finding was not a premature evaluation of an incomplete record.

Moreover, in granting defendants leave to file a supplemental motion for summary judgment on the statute-of-limitations, the Court explicitly "decline[d] to expound upon the merits" of the statute-of-limitations issue at that time "so that the parties [could] fully brief th[e] issue." (Doc. 92, at 28). This further indicates that the Court had not made up its mind on this issue and was willing to consider plaintiffs' arguments.

Given the record, no reasonable person could infer that the Court held a deep-seated favoritism for defendants or antagonism towards plaintiffs merely because it addressed plaintiffs' arguments at the summary judgment stage and its finding happened to alert defendants to another potential defense. Plaintiffs' assertion the Court intended to telegraph this defense to defendants is pure speculation and belied by the facts that the Court was responding to plaintiffs' argument, did not request any further motions on the issue, and gave plaintiffs an opportunity to fully brief the issue before issuing its ruling.

Plaintiffs' cite *Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155 (3d Cir. 1993) in support of their argument that the appearance of bias may be present when a judge prematurely evaluates evidence before the parties fully present their case. (Doc. 109-1, at 7–8). In *Alexander*, the plaintiffs appealed a judge's grant of summary judgment and were back before the same judge on remand, which they argued angered the judge. 10 F.3d at 158. On remand, the judge, among other things, berated one of the plaintiff's attorneys in a seemingly personal manner ("I indicated to [counsel] that I would appreciate candor from him and that in the past I've had difficulty with him," "I, frankly, don't care what you resent, [counsel]," "As far as you're concerned personally [counsel], I don't know [if I have bias against you], I don't think I've ever spoken with you socially"), accused two witnesses of perjury in relation to a motion for preliminary injunction, accused plaintiffs of arguing in bad faith, and appeared to be resolute in

14

holding that his finding which was reversed on appeal was actually correct. *Id.*, at 158–62, 164. The Court finds *Alexander* inapposite. Unlike that case, there is no apparent motive for the Court to have a predetermination about the merits of this case, the Court never lodged seemingly personal comments at counsel or the parties, discovery has long been closed here, and the Court did not prejudge any witness as not credible, much less accuse them of perjury. These distinctions would counsel a reasonable person against inferring bias or prejudice.

### 3. Defendants' Supplemental Motion for Summary Judgment

In granting defendants' motion for leave to file a supplemental motion for summary judgment, the Court afforded both parties an opportunity to fully brief the statute-of-limitations issue before discussing the merits. (Doc. 92, at 28). In doing so, the Court requested that the parties also brief how the statute-of-limitations issue might affect Mr. Kelly's loss of consortium claim and plaintiffs' punitive damages claim. (*Id.*, at 28 n.11). Now, plaintiffs argue that this request appeared to signal that the Court "was going to dismiss [Ms.] Kelly's claims with prejudice regardless, but seemingly sought authority to dismiss [Mr. Kelly]'s claim as well." (Doc. 109-1, at 9).

Plaintiffs' argument is purely speculative. The Court requested briefing from *both* parties about how the statute-of-limitations issue would affect the other claims in this case. Requesting comprehensive briefing from both parties would not indicate to a reasonable person that the Court had a deep-seated favoritism towards defendants or antagonism towards plaintiffs. Moreover, the Court's request that the parties brief the ramifications of its decision on the remaining claims, if anything, simply reflects the Court's thoroughness and a desire to have the parties fully brief the issues, rather than potentially address the matters in a piecemeal fashion.

In a related argument, plaintiffs assert that the Court gave defendants too many chances to brief the statute-of-limitations issue, given that the issue was not raised in

15

defendants' original motion for partial summary judgment and the brief attached to defendants' motion for leave to file a supplemental motion for summary judgment did not address the loss of consortium and punitive damages claims. (Doc. 109-1, at 9).

In granting defendants' motion for leave to file a supplemental motion for summary judgment on the statute-of-limitations, the Court discussed the merits at length. (Doc. 92, at 23–28). Notably, other courts have granted such motions without offering any reasoning. *See* (*Id.*, at 27 n.10). In its analysis, the Court was critical of defendants' failure to raise the statute-of-limitations argument earlier:

> The only good cause present here is judicial efficiency. Defendants cite no other reason why their statute-of-limitations argument could not have been included in their initial motion for summary judgment. Although many courts have found judicial efficiency alone to be sufficient under these circumstances, the Court is highly dubious of allowing a dispositive motion to be filed more than a year after the deadline.

(Doc. 92, at 27–28). Despite its frustration with defendants' untimeliness, the Court found that granting the motion for leave was appropriate because plaintiffs would eventually have to address this defense: "There is little point in requiring the parties to expend time and money in preparation for trial only for this dispute to be resolved on a legal issue that could be addressed now, even if defendants could and should have raised it earlier." (*Id.*, at 28). In sum, although the Court recognizes that its ruling on defendants' motion for leave was not plaintiffs' desired outcome, the Court fully weighed the competing interests and ultimately found that it should address the statute-of-limitations now instead of later. Given its expressed rationale and the fact that other courts have reached the same conclusion (*Id.*, at 25–27), no reasonable person could conclude that the Court held a deep-seated favoritism for defendants or antagonism towards plaintiffs as a result of its ruling.

And again, the fact that the Court requested comprehensive briefing from the parties evidences little more than the Court wanted to be fully informed on how its

conclusions would affect this case before proceeding. The Court has been careful throughout this case not to forget the loss of consortium and punitive damages claims peripheral to the central dispute here. *See* (Docs. 81, at 4 n.1, 23 n.7; 92, at 22, 24 n.7). Thus, a reasonable observer would not conclude that the Court's request for comprehensive briefing was motivated by a desire to aid defendants or dismiss plaintiffs' claims regardless of their arguments and evidence.

### 4. Assessment of the Evidence

Next, plaintiffs argue that the Court's improper and unbalanced weighing of evidence would indicate to a reasonable person that the Court is biased. (Doc. 109-1, at 8–9, 10). Plaintiffs argue that "[t]he Court basically indicated that this matter will be dismissed on statute of limitations grounds, regardless of any material evidence and arguments offered in [plaintiffs'] resistance and surreply to Defendants' supplemental summary judgment motion." (*Id.*, at 8–9).

Much of plaintiffs' argument on this point simply cites the Court's prior orders and argues the Court relied on "incomplete, immaterial, unsupported, and speculative evidence that is amply contradicted by the record." (*Id.*) (citing (Docs. 92, at 23; 107, at 15–22)). The Court discussed the evidence at length in its orders and rejected similarly broad and non-specific arguments by plaintiffs' that the evidence cited was "irrelevant, immaterial, lacking foundation, speculative, or vague." *See, e.g.*, (Doc. 107, at 15 n.8). Plaintiffs' broad disagreement with how the Court assessed the evidence would not indicate to a reasonable person that the Court had a deep-seated favoritism towards defendants or antagonism towards plaintiffs merely because it did not adopt plaintiffs' arguments and rule in their favor.

Plaintiffs do cite some specific examples where they allege the Court improperly weighed evidence. First, plaintiffs take issue with the Court's discussion of Ms. Kelly's hypothetical trial testimony. (Doc. 109-1, at 10). In its original order, the Court granted

summary judgment on Ms. Kelly's claim of negligent misrepresentation in part because Ms. Kelly testified that she did not remember reading or relying upon any of defendants' materials in selecting the TVT implant. (Doc. 81, at 3, 13). In their motion for reconsideration, plaintiffs argued that Ms. Kelly may "subsequently recollect receiving [defendants' materials] when she testifies at trial[.]" (Doc. 84-1, at 12). In denying plaintiffs' motion for reconsideration, the Court found that plaintiffs' argument "relie[d] on conjecture and speculation" because Ms. Kelly "does not assert even now that she remembers the material, only that by the time of trial she might." (Doc. 92, at 21). The Court also found plaintiffs' argument to be "patently unbelievable" because 16 years had passed since Ms. Kelly's surgery. (*Id.*). The Court concluded that, even if such hypothetical testimony were offered, no reasonably jury could rely on it given its sudden and convenient appearance. (*Id.*). The record makes clear that the Court did not actually weigh the evidence or assess Ms. Kelly's credibility. Rather, it noted that Ms. Kelly was not actually offering such testimony and that, even if such hypothetical testimony were offered, its delay and sudden appearance in contradiction of Ms. Kelly's prior testimony would obviously be suspect. That the Court played out a hypothetical alternative posed by plaintiffs would not indicate to a reasonable person that the Court improperly weighed the evidence against plaintiffs or found Ms. Kelly not credible.

Second, plaintiffs cite several of the Court's conclusions in its order granting defendants' supplemental motion for summary judgment as weighing Ms. Kelly's credibility and weighing "speculative and immaterial evidence in Defendants' favor." (Docs. 109-1, at 10; 112, at 4–5) (citing (Doc. 107, at 17–21)). The cited statements do not reflect a credibility determination of Ms. Kelly. Rather, the cited statements are the Court's conclusions, after weighing the evidence, about when Ms. Kelly knew of her injuries and at least reasonably should have known that an alleged defect in her TVT implant may have caused such injuries. It appears plaintiffs allege that the Court

18

speculated in its findings because it evaluated what Ms. Kelly reasonably should have known. The Court's findings were not speculation; it was merely applying the standard. *See* (Doc. 107, at 19) ("Again, the standard is not when plaintiff had actual knowledge of her injuries and their cause . . .. Rather, the clock begins to run when she became aware of facts that would prompt a reasonably prudent person to begin seeking information as to the problem and its cause.") (citation, emphasis, and internal quotation marks omitted). At no point did the Court reject Ms. Kelly's testimony or deem her not credible. Rather, it discussed her testimony and the other evidence in the record at length. (Doc. 107, at 15–22). In sum, no reasonable person could conclude that the Court held a deep-seated favoritism for defendants or antagonism towards plaintiffs based on the fact that plaintiffs disagree with the standard or disagree with the Court's assessment of the evidence and conclusions.

### 5. *Advocating for Defendants*

Last, plaintiffs argue it appears the Court made arguments on defendants' behalf. (Doc. 109-1, at 10–12). The Court will address the examples cited by plaintiffs in turn.

Plaintiffs argue that defendants did not address any prejudicial impact in their resistance to plaintiffs' motion for an untimely deposition, but the Court found such prejudice would be high. (*Id.*, at 11). In their resistance to plaintiffs' deposition motion, defendants argued that the Court should not "reopen discovery at this late stage," noting that discovery had closed more than a year earlier on August 1, 2019. (Doc. 88). In its order on that motion, the Court held that "it would be highly prejudicial to defendants to backtrack a year's worth of litigation by undoing the Court's grant of partial summary judgment, reinstating some of plaintiffs' claims, and requiring defendants to participate in a deposition[.]" (Doc. 92, at 9). Defendants' arguments and the Court's conclusion centered on the same facts, regardless of whether defendants framed them as an issue of prejudice. No reasonable person could conclude that the Court's different framing of the

same facts at issue constitutes offering arguments to defendants or acting as an advocate for one side.[6]

Plaintiffs also note defendants did not resist plaintiffs' argument on reconsideration that they should be able to assert a post-sale duty to warn claim. (Doc. 109-1, at 11). Plaintiffs asserted this claim for the first time in arguing for the reversal of the Court's grant of summary judgment on Ms. Kelly's failure to warn claim. (Docs. 84-1, at 8–10; 92, at 19). In their resistance, defendants resisted the reinstatement of Ms. Kelly's failure to warn claim on the merits generally but did not specifically address broadening the claim into a post-sale duty to warn claim. (Doc. 87, at 2–5) (noting, among other things, that plaintiffs could not prove proximate causation and there was no good cause for reinstating the claim). The Court found that even if Ms. Kelly's failure to warn claim was interpreted broadly to encompass a post-sale failure to warn, it would still fail due to the proximate causation issue which caused her original claim to fail. (Doc. 92, at 19–20). The Court's ruling was based on the same arguments offered by defendants and the same rationale it expressed in originally granting summary judgment on the failure to warn claim. (Doc. 81, at 9–12). That the Court did not permit plaintiffs to reinterpret their claim based only on defendants' lack of explicit resistance would not indicate to a

---

[6] The Court notes it has, at times, also broadened or reframed plaintiffs' arguments in its rulings. For example, in its original order on partial summary judgment, the Court found that plaintiffs' failure to depose Ms. Kelly's doctor alone may not be dipositive, sua sponte hypothesizing that perhaps some other evidence could exist in place of a deposition. (Doc. 81, at 10–11). It also considered how different warnings may have affected the doctor's advice to Ms. Kelly even if it would not have changed his recommendation. (*Id.*, at 11–12). Although the Court ultimately rejected these bases, it was willing to consider additional, unraised arguments that might have spared Ms. Kelly's claim. It also reframed plaintiffs' argument on negligent infliction of emotional distress when both parties cited to the incorrect standard and, at that time, denied summary judgment. (*Id.*, at 14–15). It also reframed plaintiffs' argument on the applicability of the discovery rule to Ms. Kelly's alleged recent injuries. (Doc. 107, at 13 n.6).

reasonable person that the Court had a deep-seated favoritism for defendants or antagonism towards plaintiffs.

Plaintiffs argue the Court sua sponte reversed its own finding on the qualifications of plaintiffs' expert in favor of defendants. (Doc. 109-1, at 11). In ruling on the parties' motions to exclude expert testimony, the Court found that plaintiffs' expert was qualified to testify about the adequacy of the warnings on defendants' products. (Doc. 80, at 8–9). In arguing for reconsideration after summary judgment, plaintiffs argued that reinstatement of Ms. Kelly's failure to warn claim was appropriate in part because the Court had already found that their expert was qualified to testify on the topic. (Doc. 84-1, at 8). In denying reconsideration, the Court did not sua sponte reverse its prior finding that the expert was qualified on the topic. Rather, the Court merely noted that the expert's testimony on the adequacy of the warnings would no longer be relevant at trial given that Ms. Kelly's failure to warn claim was dismissed. (Doc. 92, at 18 n.5). In other words, the footnote did not deem the expert unqualified, it only noted that his testimony on that particular topic would no longer be relevant in the event of a trial. No reasonable person could find that the Court had a deep-seated favoritism for defendants or antagonism towards plaintiffs merely because it noted the revised parameters of plaintiffs' expert's testimony in light of its order on summary judgment.[7] If anything, the Court's note suggests that it anticipated that this matter might go to trial.

Plaintiffs argue the Court criticized them for not discussing certain arguments or failing to raise certain issues but has not done the same to defendants. (Doc. 109-1, at 11). Plaintiffs cite the Court's finding that they did not raise a post-sale duty to warn

---

[7] Plaintiffs argue that their expert's testimony on the inadequacy of the warnings precludes dismissal of Ms. Kelly's failure to warn claim. (Doc. 109-1, at 11 n.9). The Court has found that there is no evidence that Ms. Kelly or her doctor ever read or relied upon the warnings. (Docs. 81, at 3, 9–12, 13–14, 20; 92, at 14–20, 21). Thus, the expert's testimony that the warnings were inadequate is immaterial and does not preclude summary judgment.

claim until after summary judgment. (*Id.*). The Court's finding on that point was sourced and accurate. (Doc. 92, at 19). As discussed above, the Court similarly criticized defendants for not raising the statute-of-limitations issue in their initial motion for summary judgment. (Doc. 92, at 27–28).[8] Plaintiffs also note two instances when the Court discussed apparent typographical errors in their briefing in footnotes; the first footnote discussed several typos which referenced Ms. Kelly's doctor by the wrong name (Doc. 81, at 10 n.2) and the second footnote discussed an incorrect citation to a non-existent Restatement section (Doc. 92, at 18 n.4). The footnotes merely established that the Court understood the errors to be typos and that some other doctor was not involved in this case and that plaintiffs intended to cite a different Restatement section. Indeed, the Court needed to make such notations of the typographical errors so that its order did not appear to be erroneous. No reasonable person could conclude that the Court's mild criticism of plaintiffs or mention of their typos indicated that the Court held a deep-seated favoritism for defendants or antagonism towards plaintiffs.

Plaintiffs argue the Court favored defendants by not addressing plaintiffs' merit-based arguments in their motion to strike which defendants did not resist. (Doc. 109-11, at 12). Plaintiffs' motion to strike defendants' motion for supplemental summary judgment primarily argued that Ms. Kelly's deposition testimony should be partially excluded because the attorney who deposed her did not file a notice of appearance. (Doc. 94-1). The motion to strike also, however, challenged the actual merits of defendants' motion, broadly arguing that it relied on immaterial and speculative facts. (*Id.*, at 7–9). Plaintiffs also asserted specific fact-based arguments and noted some of their arguments would "be further addressed in [their] resistance to" defendants' motion. (*Id.*). Indeed,

---

[8] The Court also, for example, criticized defendants' arguments as to plaintiffs' unjust enrichment claim. (Doc. 81, at 21–22).

plaintiffs asserted the same or similar arguments in their actual resistance. (Doc. 95, at 5–9). Defendants did not address plaintiffs' merit-based arguments in their resistance to the motion to strike (Doc. 101) but they did lay out the facts supporting their position in detail in their supplemental motion for summary judgment (Doc. 102, at 4–12).

The Court ruled on plaintiffs' motion to strike and defendants' motion for supplemental summary judgment at the same time. (Doc. 107). Instead of considering plaintiffs' merit-based arguments in its section ruling on the motion to strike, the Court elected to consider them in its analysis of the underlying motion itself. *See, e.g.*, (Doc. 107, at 5 n.2). This was an efficient and appropriate manner of addressing these arguments. *See, e.g.*, *McZeal v. Louisiana*, No. 19-517-SDD-RLB, 2020 WL 3065300, at *1–2 (M.D. La. June 9, 2020) ("The Court will consider Plaintiffs' [merit-based] arguments in addressing the merits of Defendants' Motion to Dismiss."); *Vora v. Equifax Info. Servs., LLC*, No. 19-00302 AG (KESx), 2019 WL 3220023, at *2 (C.D. Cal. May 29, 2019) ("[A] motion to strike is an improper vessel for such substantive, merit-based arguments."); *Malibu Media, LLC v. Julien*, No. 1:12-cv-01730-TWP-MJD, 2013 WL 5274262, at *3 (S.D. Ind. Sept. 17, 2013) (directing the plaintiff to reserve its merit-based arguments for summary judgment as opposed to stating them in its motion to strike). In its section on defendants' supplemental motion for summary judgment, the Court addressed and rejected plaintiffs' specific fact-based arguments. (*Id.*, at 14–22) (addressing, for example, Ms. Kelly's 2013 pelvic surgery, her 2014 TVT removal surgery, and her potential belief in post-operative side effects following implantation). The Court also addressed and rejected plaintiffs' broad argument that defendants' cited facts were immaterial and speculative, both explicitly (*Id.*, at 15 n.8) and generally by discussing and weighing the evidence. A reasonable person could not conclude that the Court had a deep-seated favoritism for defendants or antagonism towards plaintiffs merely because it chose to address plaintiffs' arguments in one section and not another.

### 6. Conclusion

The Court finds that its impartiality is not reasonably questioned in this matter. Plaintiffs' arguments to the contrary merely reflect their dissatisfaction with the outcome, their disagreement with the Court's reasoning, and their unwarranted speculation that the Court was for some unknown reason determined to dismiss this case on summary judgment. Notably, the fact that the Court was not asked to recuse itself until after this case was dismissed (Doc. 108) further suggests that plaintiffs' motion for recusal is driven by their mere dissatisfaction with the outcome. (Doc. 112, at 2–3) (describing the Court's dismissal of this case as the "culminat[ion]" of the bias against plaintiffs and the "principle" act of bias on which their motion is based).

The scheduling and timing issues plaintiffs cite were ordinary decisions the Court made in handling its docket. It is unreasonable to infer that the Court was determined to dismiss plaintiffs' case at the outset merely because it chose to rule on the pending motions and their subsequent iterations before proceeding, particularly when neither party ever requested that any deadlines be set. An objective observer could not reasonably infer anything from the Court's docket management.

It is similarly unreasonable to infer that the Court predetermined that this case would be dismissed on the statute-of-limitations in light of the record. The Court declined to grant defendants' motion for partial summary judgment on several of plaintiffs' claims (Doc. 81) without any direction that defendants should pursue a supplemental motion for summary judgment. The Court weighed the competing interests of allowing such a motion later and, despite its expressed concerns, concluded that allowing the motion was the most efficient manner of handling the issues in this case. (Doc. 92). In doing so, it gave both parties the opportunity to fully brief the issue before ruling. None of these actions would indicate to a reasonable person that the Court was firmly committed to

24

dismissing this case despite the evidence and arguments or held a deep-seated favoritism for defendants or antagonism towards plaintiffs.

Further, the Court's direction to the parties to fully brief the issues also does not reasonable indicate that the Court was fishing for authority to dismiss the entirety of the case. To an objective observer, it would merely reflect the Court's desire to be fully informed.

A reasonable person would also not conclude that the Court improperly weighed the evidence, assessed witness testimony, or disregarded facts in the record so as to favor one side. The Court has issued extensive orders in this case fully expressing its reasoning, addressing the arguments raised, and evaluating the record. (Docs. 80, 81, 92, & 107). That plaintiffs disagree with the Court would not cause a reasonable person to infer that the Court is impartial. *See Rubashkin*, 2016 WL 237119, at *16 ("Judicial rulings or opinions that are formed on the basis of facts introduced in the course of a judicial proceeding will almost never provide a basis for recusal.").

Finally, the Court has mildly criticized the arguments and timeliness of both plaintiffs and defendants at various times in this case. It has disagreed with the parties, rejected their arguments, and at times pointed out their mistakes. These functions are ordinary for a court to engage in and fall far short of indicating to a reasonable person that the Court here deeply favored defendants over plaintiffs. *See Liteky*, 510 U.S. at 555 ("expressions of impatience, dissatisfaction, annoyance, and even anger" are insufficient).

In sum, the Court finds that a reasonable person would not infer that the Court has "violate[d] basic precepts of judicial ethics," failed to afford the parties "fundamental fairness and equity," passed judgment without hearing the evidence, or failed to remain neutral, impartial, or unbiased as plaintiffs assert. *See* (Doc. 109-1, at 7). Rather, this is a case where the Court must abide by its equal duty not to recuse itself when

unwarranted. *See Rubashkin*, 2016 WL 237119, at *14. A reasonable person, aware of the facts of this case and the arguments cited by plaintiffs above, could not conclude that the Court holds a disposition "so extreme as to display clear inability to render fair judgment." *See Liteky*, 510 U.S. at 551. To the contrary, a reasonable observer reading the Court's expansive opinions in this case could only conclude that the Court simply performed its ordinary functions and plaintiffs merely disagree with the Court's reasoning and are dissatisfied with the outcome. Plaintiffs have a right to disagree with the Court's reasoning and be dissatisfied with the outcome. Those arguments, however, warrant appeal, not recusal. *See id.*, at 555.

For these reasons, the Court finds that recusal is not required under Section 455(a) and it declines to recuse.

### B. Actual Bias

In asserting their arguments for actual bias under Section 455(b)(1), plaintiffs rely on all the same arguments discussed above. (Doc. 109-1, at 14). Plaintiffs also note that they "are presently unaware of any overt bias or prejudice stemming from any extrajudicial source" which would require recusal. (*Id.*, at 6 n.5).

The Court rejects plaintiffs' arguments for the same reasons outlined above. The Court does not have any "personal knowledge of disputed evidentiary facts" in this case. *See* 28 U.S.C. § 455(b)(1). The Court also does not have any "personal bias or prejudice" against any party or their counsel. *See id.* As noted earlier, the Court does not personally know any of the parties or their attorneys and it does not have any known affiliations or interests related to any person or entity in this case. The Court states unequivocally that it never withheld scheduling because it anticipated that this case would be dismissed, that it did not make up its mind that this case would be dismissed on the statute-of-limitations before considering all the evidence and arguments, that it never intended to signal additional defenses or arguments to either party or advocate for either

party, and that it did nothing more than attempt to resolve the issues before it as neutrally, fairly, and thoroughly as possible. The Court understands that it is bound by its oath of impartiality, and it upholds that oath with the upmost sincerity. At no time in this case did the Court take any action or issue any ruling for any reason other than its honest professional assessment of the evidence and arguments presented.

For these reasons, the Court finds that recusal is not required under Section 455(b)(1) and it declines to recuse.

## V.    *CONCLUSION*

For these reasons, the Court **denies** plaintiffs' Motion to Disqualify and Transfer this Matter. (Doc. 109).

**IT IS SO ORDERED** this 18th day of February, 2021.

_____
C.J. Williams
United States District Judge
Northern District of Iowa